# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**Kubicheck v. Traina, 2013 IL App (3d) 110157**

---

| | |
|---|---|
| Appellate Court Caption | GINA KUBICHECK, Plaintiff-Appellee, v. JEFFREY F. TRAINA, M.D., Defendant-Appellant. |
| District & No. | Third District<br>Docket No. 3-11-0157 |
| Filed | September 23, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a medical malpractice action arising from defendant's surgical repair of plaintiff's ankle, the trial court's grant of a new trial to plaintiff following a jury verdict for defendant was upheld based on the failure of defendant's expert witness to fully disclose information relating to his testimony in other cases and the resulting impairment of plaintiff's ability to impeach the expert during cross-examination. |
| Decision Under Review | Appeal from the Circuit Court of Peoria County, No. 06-L-397; the Hon. Stephen Kouri, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Joshua G. Vincent (argued), of Hinshaw & Culbertson LLP, of Chicago, and Paul C. Estes and Patricia J. Naylor, both of Hinshaw & Culbertson LLP, of Peoria, for appellant.

M. Tod Melton (argued), of Ludens Potter Melton & Calvo, of Morrison, for appellee.

Panel

JUSTICE HOLDRIDGE delivered the judgment of the court, with opinion.

Justices Lytton and Carter concurred in the judgment and opinion.

## OPINION

¶ 1      Gina Kubicheck sued Dr. Jeffrey Traina, an orthopedic surgeon, for professional negligence in connection with a surgical procedure that Dr. Traina performed on Kubicheck's ankle. The jury returned a verdict for Dr. Traina. Kubicheck filed a posttrial motion for a new trial. The trial court found that Dr. Traina's expert witness, Dr. George Holmes, failed to fully disclose information relating to prior testimony that he had given in other cases, thereby impairing Kubicheck's counsel's ability to impeach Dr. Holmes during cross-examination. Accordingly, the trial court granted Kubicheck a new trial. In response to a motion to clarify later filed by Dr. Traina, the trial court issued an order stating that Dr. Holmes would not be barred from testifying during the retrial.

¶ 2      Dr. Traina filed a petition for leave to appeal (PLA) the trial court's order granting Kubicheck a new trial under Illinois Supreme Court Rule 306 (eff. Feb. 16, 2011). This court entered an order denying Dr. Traina's PLA. *Kubicheck v. Traina*, No. 3-11-0157 (Sept. 7, 2011). Exercising its supervisory authority, the Illinois Supreme Court subsequently ordered this court to vacate its order denying Dr. Traina's PLA and to hear the appeal on the merits. *Kubicheck v. Traina*, No. 113130 (Jan. 25, 2012). In this appeal, Dr. Traina asks us to reverse the trial court's order granting Kubicheck a new trial as a discovery sanction.

¶ 3                                            FACTS

¶ 4      Dr. Traina first treated Kubicheck in June 1995 when she was brought to the emergency room following an automobile accident. Kubicheck had broken her ankle in four places, and there was damage to the cartilage lining the ankle joint. Although she recovered well initially, Kubicheck soon developed some arthritic pain and limitation in the motion of her ankle. Dr. Traina told her that she might need to have surgery in approximately 10 years to resolve the arthritic pain.

¶ 5    Nine years later, Kubicheck returned to Dr. Traina, complaining of ankle pain and stiffness and decreased range of motion of her ankle. Her pain was in the tibiotaler joint, which is where the lower leg bone (tibia) meets the ankle bone (talus). After conservative treatment measures failed to provide lasting relief, Kubicheck chose to undergo tibiotaler fusion surgery. During that procedure, the tibia and the talus are trimmed, and the surfaces of these two bones are mated and screwed together, leaving the foot perpendicular to the lower leg and flat to the ground.

¶ 6    Dr. Traina performed the surgery on October 29, 2004. Two X-rays were taken in the operating room after the screws were inserted to confirm that Kubicheck's foot was in a natural (*i.e.*, flat) position. Dr. Traina concluded that Kubicheck's foot was two degrees from perpendicular at the conclusion of the surgery. In Dr. Traina's opinion, this alignment was reasonable and was not an abnormal position for a surgical fusion.

¶ 7    One week after the surgery, Dr. Traina gave Kubicheck a removable fracture boot and instructed her to wear it whenever she was walking or weight-bearing on the foot.

¶ 8    On March 22, 2005, Kubicheck underwent physical therapy. The physical therapy records noted no boot or other protective device on Kubicheck's foot. The physical therapist noted that Kubicheck's foot was plantar flexed[1] 25 degrees from perpendicular and fixed in that position. She noted that she had never seen a foot fixed in that position.

¶ 9    On April 6, 2005, Kubicheck saw Dr. Nirain D'Souza, another orthopedic surgeon. Kubicheck was not wearing any type of protective device on her foot at the time she saw Dr. D'Souza. Kubicheck could not touch her heel to the ground without hyperextending her knee. Dr. D'Souza X-rayed Kubicheck's foot and concluded that it was plantar flexed approximately 40 degrees from perpendicular.

¶ 10   On April 25, 2005, Dr. D'Souza performed corrective surgery on Kubicheck's ankle. During the surgery, Dr. D'Souza determined that none of the screws that Dr. Traina had inserted into Kubicheck's ankle had penetrated her subtaler joint. Kubicheck's ankle did not heal. On October 7, 2005, Dr. D'Souza performed a second corrective surgery to insert an internal bone stimulator. The procedure involved the removal and replacement of the hardware in Kubicheck's ankle. A subsequent X-ray revealed that one of the screws implanted by Dr. D'Souza had penetrated Kubicheck's subtaler joint. Accordingly, Dr. D'Souza performed a third corrective surgery (a subtaler fusion) on March 10, 2006.

¶ 11   Kubicheck subsequently filed suit against Dr. Traina, alleging professional negligence. Dr. George Holmes was initially retained by Kubicheck as her expert witness. However, the trial court later issued an agreed order permitting Dr. Holmes to serve as Dr. Traina's expert so long as he did not disclose the content of any of his communications with Kubicheck or her counsel. Aside from Dr. Traina himself, Dr. Holmes was the only witness to testify on Dr. Traina's behalf.

¶ 12   On November 14, 2006, Kubicheck propounded production requests upon Dr. Traina.

_____

[1]"Plantar flexion" occurs when the foot is slanted in a downward position, with the toes pointing toward the sole of the foot.

One of those requests asked Dr. Traina to produce records for each of his controlled expert witnesses, including "[r]ecords pertaining to the frequency with which the witnesses acted as an expert on behalf of plaintiffs and defendants in litigation during the past five years." On April 27, 2007, Dr. Traina responded that there were no such records and promised to "seasonably supplement this response in accordance with all Witness Disclosure Deadline Orders and the Illinois Supreme Court Rules." On June 25, 2009, Dr. Traina disclosed himself and Dr. Holmes as controlled expert witnesses under Illinois Supreme Court Rule 213(f)(3) (eff. Jan. 1, 2007). However, he did not supplement his responses to Kubicheck's production requests.

¶ 13     On August 19, 2009, the trial court ordered Dr. Traina to supplement his answers to expert discovery requests by September 2, 2009. Dr. Traina failed to comply. On October 9, 2009, the trial court again ordered Dr. Traina to comply with Kubicheck's expert discovery requests, but he again failed to comply.

¶ 14     On October 22, 2009, Kubicheck noticed Dr. Holmes's deposition for November 30, 2009. The deposition notice required Dr. Holmes to produce at his deposition "[a] list of case names and numbers of all cases in which the witness has testified by deposition or in court and [the] names of other lawyers or law firms by whom the witness has been retained as an expert or consulting expert during the past five years." On November 25, 2009, Dr. Traina submitted a supplemental response to Kubicheck's discovery request in which he claimed that there were no records pertaining to how often Dr. Holmes had testified for plaintiffs and defendants. By agreement of the parties, Dr. Holmes's deposition was continued to December 7, 2009. The amended notice of deposition required Dr. Holmes to bring the same documents listed in the initial deposition notice.

¶ 15     During his December 7, 2009, deposition, Dr. Holmes did not produce a list of prior cases in which he testified. However, despite Dr. Traina's previous contention that no such list existed, Dr. Holmes admitted that such a list existed and insisted on producing the list in lieu of answering questions on the subject.

¶ 16     When Dr. Holmes failed to produce the list after the deposition, Kubicheck's counsel sent a letter to Dr. Traina's counsel pursuant to Illinois Supreme Court Rule 201(k) (Ill. S. Ct. R. 201(k) (eff. July 1, 2002)) asking that the list be provided. A second Rule 201(k) letter was sent on March 19, 2010. After the second letter, defense counsel Patricia Naylor told Kubicheck's counsel that she was trying to obtain the list from Dr. Holmes, and she repeatedly promised to produce the material. She indicated that her office had been in almost daily contact with Dr. Holmes. However, the list was not produced.

¶ 17     On April 19, 2010, one week before the trial was scheduled to begin, Kubicheck's counsel filed a motion to bar Dr. Holmes's testimony because of the ongoing discovery violations. In the motion, Kubicheck argued that "at this point, production of the requested materials is too late to be useful to [Kubicheck] at trial, in light of the fact that *** it would be impossible for [Kubicheck's] counsel to follow-up and discover Dr. Holmes's prior testimony in a meaningful manner for the purpose of proper cross-examination." Kubicheck's counsel e-mailed a copy of the motion to Naylor. Forty-five minutes later, Naylor responded by e-mail, promising to provide the materials the following morning. At

4:38 p.m. on the following day (Tuesday, April 20), Kubicheck's counsel sent Naylor an e-mail indicating that he had not yet received the materials. A list of 18 cases was produced 15 minutes later. The parties were scheduled to attend evidence depositions in Illinois and California on April 21, 22, and 23, with trial beginning the following Monday (April 26).

¶ 18    On the second day of trial (April 27), the trial court addressed Kubicheck's motion to bar Dr. Holmes's testimony. During argument on Kubicheck's motion, her counsel said he had conducted his own research into Dr. Holmes's history of testifying in other cases and that he was aware of at least one case in which Dr. Homes had to withdraw and ended up not testifying because of his failure to comply with a similar discovery request. Although the court stated that it was "really troubled by this failure to give the list of cases *** in a timely fashion," it did not bar Dr. Holmes from testifying. Instead, the court attempted to craft a remedy by giving Kubicheck's counsel wide latitude to attack Dr. Holmes's credibility during cross-examination by showing that Dr. Holmes had withheld information about the cases in which he had previously testified.

¶ 19    Two days later, during the fourth day of trial, Dr. Holmes testified that patients often do not heal properly after ankle fusion surgeries for a variety of reasons, and the fact that Kubicheck developed plantar flexion within six months of her surgery did not indicate that Dr. Traina had done anything wrong. He opined that the revision surgery of April 25, 2005, was due to an "unavoidable potential complication" of the initial fusion surgery performed by Dr. Traina and not to any substandard care by Dr. Traina. He also opined that the initial fusion surgery was performed "adequately with good alignment," and he found no violations of the standard of reasonable care for orthopedic surgeons in Dr. Traina's treatment of Kubicheck.[2]

¶ 20    Kubicheck's counsel's cross-examination of Dr. Holmes spans 37 pages of the trial transcript, 27 of which concern Dr. Holmes's testimony in other cases. When Kubicheck's counsel asked Dr. Holmes about his delay in providing the list of prior cases, Dr. Holmes responded that his first recollection of being asked to provide those documents was "about

---

[2]The parties' witnesses offered conflicting testimony on this issue. Drs. Holmes and Traina testified that the X-rays taken immediately after Dr. Traina performed the initial tibiotaler fusion surgery on October 29, 2004, showed that Kubicheck's foot was two degrees from perpendicular at the conclusion of the surgery. Dr. Holmes testified that this alignment was reasonable and was not an abnormal position for a surgical fusion. Dr. Traina testified that, when he removed Kubicheck's cast one week after the surgery, the incisions were healing well, there were no problems with the angulation of the fusion site, and her foot alignment looked fine. Dr. D'Souza testified that the intraoperative X-rays showed less than five degrees of plantar flexion and good alignment, and that zero to five degrees of plantar flexion is considered the position of choice for women who wish to wear a fashionable shoe. However, based on his examination of Kubicheck in April of 2005, Dr. D'Souza opined that the ankle fusion surgery performed by Dr. Traina in October 2004 was below the standard of care. Kubicheck's expert, Dr. Tye Ouzounian, agreed that a slant of five degrees or less from perpendicular is within the standard of care. However, Dr. Ouzounian testified that he could not tell from Dr. Traina's intraoperative X-rays whether Kubicheck's foot was well aligned at the conclusion of her surgery.

a week or so ago" and that if he had been asked to produce the documents sooner, he would have done so. Dr. Holmes admitted that the list of prior cases that was produced to defense counsel did not include any video deposition testimony and did not include all of the trials wherein Dr. Holmes had testified live.

¶ 21 Kubicheck's counsel asked Dr. Holmes about his testimony in some other cases, stating "[w]ell Doctor, I am pleased to say, that without your help I have been able to obtain quite a little bit of your testimony in other cases." During his cross-examination, Kubicheck was able to establish that Dr. Holmes: (1) testified for defendants 80% of the time; (2) never testified for a plaintiff prior to 1999 and did so only once through 2003; (3) derived 10% to 15% of his income from medical-legal work; (4) testified in a 2002 case that he made as much as 25% of his income as an expert witness; (5) previously characterized a defense verdict for a colleague as a personal victory resulting from his expert testimony; and (6) previously testified that five degrees of plantar fusion was abnormal.

¶ 22 The jury returned a verdict in favor of Dr. Traina.

¶ 23 Kubicheck filed a posttrial motion, arguing that she was entitled to a new trial because of Dr. Holmes's delay in producing the list of cases in which he had previously testified. Kubicheck's counsel presented an affidavit from an attorney who had deposed Dr. Holmes in a prior Will County case and other evidence suggesting that Dr. Holmes had engaged in similar stonewalling tactics in at least two prior cases. For example, the Will County attorney stated that, during a deposition, Dr. Holmes had promised to produce a list of cases in which he had previously testified, failed to produce the list, and then claimed that he was unaware of the attorney's requests for it when he was asked about the matter at trial. Kubicheck cited several federal court decisions in which courts barred the testimony of a retained expert who failed to comply with a discovery request for the expert's testimonial history. She also cited the Illinois Supreme Court's decision in *Sears v. Rutishauser*, 102 Ill. 2d 402 (1984), which held that it is reversible error to preclude a party from properly cross-examining his opponent's retained expert on issues of credibility and bias. Based on these cases, Kubicheck argued that she was entitled to a new trial "wherein the testimony of Dr. Holmes is barred as a sanction for his non-compliance with repeated discovery requests, deposition questions, and court orders."

¶ 24 During the hearing on Kubicheck's posttrial motion, the trial court asked Kubicheck's counsel if there was "some very significant information out there that came to light to you after the trial and had there been a better disclosure [by Dr. Holmes] you would have had that information." Kubicheck's counsel responded:

"No. And our position is that [Dr. Holmes] should be barred. I mean, our position is that we have never at any point received the truth; that we have never at any point, including at trial, received the full disclosure. We did find out at trial that there were additional trials [in which Dr. Holmes had previously testified] that I didn't have the transcripts for and that weren't on [Dr. Holmes's] list. It came up that he had testified at multiple trials in the defense of Armen Kelikian. None of those were on the list. I did not have those in my stack either. So we still have this evasiveness to where we just don't know what the full list details."

Kubicheck's counsel told the trial court that, through his own efforts after the trial, he determined that Dr. Holmes had been barred from testifying in at least one other case for failing to disclose financial information. He also stated that "it would have been nice to have seen what [Dr. Holmes's] opinions on the standard of care were in other cases," and suggested that such information might have changed the way that he cross-examined Dr. Holmes. He complained that this information was "[not] available to us because [Dr. Holmes] didn't produce it."

¶ 25 On February 18, 2011, the trial court issued a written order granting Kubicheck's motion for a new trial. The court noted that "Dr. Holmes was a very persuasive witness, the sole expert witness called by the defense," and stated that, in its initial pretrial assessment of the issue, the court "did not give sufficient weight to the importance of the information to [Kubicheck]." After noting that there were few Illinois cases on point, the court cited several federal court decisions which explained the importance of disclosing evidence that could establish bias or otherwise help to impeach the credibility of an expert witness. The court acknowledged that these cases were not binding, but it ruled that they "provid[ed] useful guidance" on the issue before the court. The trial court further noted:

> "The failure of Dr. Holmes to disclose the list in a timely manner, despite repeated requests by [Kubicheck] to do so, put [Kubicheck] at an unfair disadvantage. *** The disclosure that was provided occurred at a time when [Kubicheck] had as a practical matter no time to utilize the information. The effect was as if no disclosure was made at all. The relief or remedy fashioned by the court was inadequate.
>
> At the time this Court addressed [Kubicheck's] Motion to Bar Witness, it did not have specific information as to similar non-disclosure by Dr. Holmes in at least two other cases. It is not necessary to determine whether Dr. Holmes is deliberately attempting to conceal relevant information, is far too busy to be an expert witness in this case, does not have a high regard for court rules, or perhaps has some other explanation. *** [A]t a minimum Dr. Holmes has shown gross disregard for the rules of this Court which are designed to provide a fair procedure. *** In any event, his failure to abide by the rules placed [Kubicheck] at an unfair disadvantage which was not cured by the Court's earlier attempted remedy.
>
> Accordingly, with great reluctance and appreciation for the costly nature of the remedy awarded herein, [Kubicheck's] Post-Trial Motion for a new trial is allowed."

¶ 26 Dr. Traina filed a petition for leave to appeal the trial court's order granting Kubicheck a new trial under Illinois Supreme Court Rule 306, which this court denied. *Kubicheck v. Traina*, No. 3-11-0157 (Sept. 7, 2011). The supreme court subsequently issued a supervisory order directing this Court to vacate its denial of Dr. Traina's PLA and hear the appeal on the merits. *Kubicheck v. Traina*, No. 113130 (Jan. 25, 2012).

¶ 27                                                    ANALYSIS

¶ 28 The trial court granted a new trial as a sanction for Dr. Holmes's repeated discovery abuses. Illinois Supreme Court Rule 219(c) authorizes a trial court to enter any order that is "just" to remedy a party's unreasonable failure to comply with the supreme court's discovery

rules or with an order issued under those rules. Ill. S. Ct. R. 219(c) (eff. July 1, 2002).[3] A "just" order of sanctions under Rule 219(c) is one which, "to the degree possible, insures both discovery and a trial on the merits." *Shimanovsky v. General Motors Corp.*, 181 Ill. 2d 112, 123 (1998). "When imposing sanctions, the court's purpose is to coerce compliance with discovery rules and orders, not to punish the dilatory party." *Id.*; see also *Besco v. Henslee, Monek & Henslee*, 297 Ill. App. 3d 778, 782 (1998) ("the purpose of Supreme Court Rule 219(c) is to advance the discovery process and encourage a trial on the merits," not to punish the offending party, and "judges may not impose sanctions that are intended primarily as punishment").

¶ 29    Under the appropriate circumstances, a trial court may order a new trial as a result of a discovery violation committed by the party who prevailed in the initial trial. See, *e.g.*, *White v. Garlock Sealing Technologies, LLC*, 373 Ill. App. 3d 309, 327-29 (2007); *Delvecchio v. General Motors Corp.*, 255 Ill. App. 3d 189, 203 (1993); *Boettcher v. Fournie Farms, Inc.*, 243 Ill. App. 3d 940, 946-49 (1993); see also *Boren v. BOC Group, Inc.*, 385 Ill. App. 3d 248 (2008) (defendant's failure to disclose relevant documents that could have been used to impeach a "key" expert witness, coupled with other prejudicial errors that occurred during the trial, warranted a new trial); *Varady*, 153 Ill. App. 3d at 1071-72. "Discovery is not a tactical game to be used to obstruct or harass the opposing litigant" (*Williams v. A.E. Staley Manufacturing Co.*, 83 Ill. 2d 559, 564-66 (1981); *Boettcher*, 243 Ill. App. 3d at 947), and the discovery rules "require full and complete disclosure in order to achieve the ultimate goal of a speedy, efficient, and just resolution of cases" (*Boettcher*, 243 Ill. App. 3d at 947). " 'Fractional disclosure' " (or " 'half truths' ") in discovery are "equivalent to outright lies" (*Boettcher*, 243 Ill. App. 3d at 947), which "have the effect of affirmative concealment, since they imply that there is no information or evidence to be sought" (*Ostendorf v. International Harvester Co.*, 89 Ill. 2d 273, 282 (1982); see also *Buehler v. Whalen*, 70 Ill. 2d 51, 67-68 (1977)). If a party's discovery violations force the opposing party to proceed to trial without having access to the whole truth, a sanction less drastic than granting a new trial, such as an order of contempt against the nondisclosing party, may be inadequate. *Boettcher*, 243 Ill. App. 3d at 947.

¶ 30    A motion for a new trial is within the trial court's discretion, and the trial court's decision will not be disturbed on appeal absent a clear abuse of that discretion. *Delvecchio*, 255 Ill. App. 3d at 193-94. Likewise, the imposition of sanctions for failure to comply with discovery rules and orders, and decisions regarding what type of sanction to impose, are matters within

---

[3]The trial court did not explicitly state that it was granting a new trial under Rule 219(c). However, it clearly granted a new trial as a sanction for Dr. Holmes's discovery abuses. In so ruling, it cited *Varady v. Guardian Co.*, 153 Ill. App. 3d 1062, 1071-72 (1987), a case addressing sanctions under Rule 219(c). Thus, it is proper to assume that the trial court relied upon Rule 219(c). Regardless, we review the trial court's judgment, not its rationale, and we may affirm on any basis that the record supports. *People v. Reed*, 361 Ill. App. 3d 995, 1000 (2005). Accordingly, if it would not have been an abuse of discretion for the trial court to grant a new trial as a sanction under Rule 219(c), we may affirm the court's judgment even if the court did not rely on that rule. See *Leonardi v. Loyola University of Chicago*, 168 Ill. 2d 83, 97 (1995).

the broad discretion of the trial court. *Id.*; see also *Besco*, 297 Ill. App. 3d at 782. We may reverse a trial court's imposition of a particular sanction only when the record establishes a clear abuse of discretion. *Shimanovsky*, 181 Ill. 2d at 123; *Delvecchio*, 255 Ill. App. 3d at 193-94. As the Illinois Supreme Court has noted, this is "the most deferential standard of review available with the exception of no review at all." (Internal quotation marks omitted.) *People v. Coleman*, 183 Ill. 2d 366, 387 (1998). A trial court abuses its discretion only when its decision is "arbitrary, fanciful or unreasonable [citation] or where no reasonable person would agree with the position adopted by the trial court." *People v. Becker*, 239 Ill. 2d 215, 234 (2010).

¶ 31     To determine if the trial court abused its discretion in imposing sanctions under Rule 219(c), we look to the criteria upon which the trial court relied in determining an appropriate sanction. *Shimanovsky*, 181 Ill. 2d at 123. "The factors a trial court is to use in determining what sanction, if any, to apply are: (1) the surprise to the adverse party; (2) the prejudicial effect of the proffered testimony or evidence; (3) the nature of the testimony or evidence; (4) the diligence of the adverse party in seeking discovery; (5) the timeliness of the adverse party's objection to the testimony or evidence; and (6) the good faith of the party offering the testimony or evidence." *Id.* at 124; *Besco*, 297 Ill. App. 3d at 783. "Of these factors, no single factor is determinative." *Shimanovsky*, 181 Ill. 2d at 124.

¶ 32     Applying these factors, we cannot say that the trial court abused its discretion in granting Kubicheck's motion for a new trial in this case. All of the relevant factors support the trial court's decision. First, Dr. Holmes's admission during cross-examination that he had provided testimony in additional cases besides those on the previously produced list surprised Kubicheck. That admission came during the fourth day of trial, months after Dr. Holmes's deposition, and far too late for Kubicheck's counsel to obtain a complete case list and use the information at trial.[4]

¶ 33     Second, it would have been reasonable for the trial court to conclude that Kubicheck was prejudiced by Dr. Holmes's discovery abuses. Dr. Holmes was a critical witness for the defense. He was the only expert witness, other than Dr. Traina himself, to testify on Dr. Traina's behalf. As such, he was the only arguably disinterested expert to testify that Dr. Traina did not violate the standard of care. Accordingly, anything that could impeach Dr. Holmes's credibility (such as evidence of a pro-defense bias or evidence that he had given contradictory testimony in previous litigation) was critical to Kubicheck's case. Although Dr. Holmes eventually disclosed a partial list of cases in which he had previously testified (after repeatedly failing to do so earlier despite prior discovery requests and court orders), this disclosure came on the eve of trial, giving Kubicheck's counsel limited time to obtain and review the relevant trial transcripts.

---

[4]Moreover, Kubicheck's counsel was certainly surprised by Dr. Holmes's assertion during cross-examination that his first recollection of being asked to provide a list of his prior testimony was "about a week or so ago," and that he would have produced the documents sooner if he had been asked to do so. That statement directly contradicted statements Dr. Holmes made under oath during his December 2009 deposition.

¶ 34       Further, by his own admission, the disclosure that Dr. Holmes ultimately made was incomplete. He never disclosed all of the cases in which he had previously testified. Thus, Kubicheck's counsel was unable to review all of the relevant trial transcripts prior to trial and unable to determine with certainty whether Dr. Holmes had given any contradictory testimony in a prior case. Although Kubicheck's counsel was able to impeach Dr. Holmes with testimony that he had given in some other cases, he was unable to determine the impeachment value of the testimony that was never disclosed.

¶ 35       Moreover, when Kubicheck's counsel asked Dr. Holmes about his delay in providing the list of prior cases, Dr. Holmes responded that his first recollection of being asked to provide those documents was "about a week or so ago," and he testified that, if he had been asked to produce the documents sooner, he would have done so. As noted, this testimony directly contradicted Dr. Holmes's December 2009 deposition testimony and it arguably created the false (and prejudicial) impression that Dr. Holmes had made a good-faith attempt to produce all of the relevant information in a timely fashion.

¶ 36       In sum, given the centrality of Dr. Holmes's testimony and the importance of his credibility, the trial court could have reasonably concluded that Dr. Holmes's failure to make a timely and complete disclosure was prejudicial. It would be unfair to require Kubicheck to make a more definitive showing of prejudice in this case because Dr. Holmes is in control of the relevant information and Kubicheck cannot know the full impact of that information without seeing it. See *Delvecchio*, 255 Ill. App. 3d at 200 (affirming grant of a new trial as a discovery sanction where defendant automobile manufacturer improperly failed to disclose information about similar complaints made by other individuals involved in car accidents, reasoning that " '[s]ince plaintiff was denied [an] opportunity to investigate these complaints prior to trial, no one will ever know their effect unless a new trial is granted' ").

¶ 37       The remaining factors also support the trial court's ruling. As noted, the nature of the information sought by Kubicheck was relevant to the impeachment of a critically important defense witness (the only arguably disinterested expert to testify for the defense). In addition, Kubicheck's counsel's efforts to discover and introduce evidence of Dr. Holmes's testimony in prior cases were made diligently and in good faith, and counsel raised timely objections to Dr. Holmes's repeated failure to produce the information. Although he arguably should have filed a motion to compel production of the information prior to trial, Kubicheck's counsel made repeated requests for the information and lodged several timely objections to Dr. Holmes's failure to disclose the information. He also obtained two court orders requiring Dr. Traina to supplement his expert disclosures and sent Dr. Traina's counsel two Rule 201(k) letters before moving to bar Dr. Holmes's expert testimony as a discovery sanction.

¶ 38       Dr. Traina does not dispute that Dr. Holmes unreasonably failed to provide discoverable information in a timely fashion. Nevertheless, he argues that the trial court erred in granting Kubicheck a new trial as a discovery sanction because: (1) the trial court improperly punished Dr. Traina for discovery violations committed by Dr. Holmes; (2) the trial court imposed a sanction based on discovery violations Dr. Holmes allegedly committed in other cases; and (3) Kubicheck was not prejudiced by Dr. Holmes's failure to disclose the information. We address these arguments in turn.

¶ 39 Dr. Traina argues that the trial court erred by sanctioning him for discovery violations committed by Dr. Holmes. Specifically, Dr. Traina notes that Rule 219(c) applies only to discovery abuses committed by "a party, or any person at the instance of or in collusion with a party" (Ill. S. Ct. R. 219(c) (eff. July 1, 2002)), and that the discovery violation in this case was committed by *Dr. Holmes*, not by Dr. Traina. Moreover, as Dr. Traina observes, the trial court stated that "[t]here is absolutely nothing in the record that suggests any fault directly on [Dr. Traina] or his attorneys for the failure to comply with discovery. To the contrary, it appears defense counsel was making every effort to comply." Nevertheless, we find no error in the trial court's decision to impose sanctions on Dr. Traina. The discovery rules impose enforceable obligations upon the parties, including a duty to disclose relevant and discoverable information relating to their controlled expert witnesses. See, *e.g.*, Ill. S. Ct. R. 213(f)(3) (eff. Jan. 1. 2007). The failure to make such disclosures in a timely and complete fashion justifies sanctions against the parties, even if the failure is the result of actions taken or not taken by the controlled witnesses themselves. See, *e.g.*, *Decker v. St. Mary's Hospital*, 249 Ill. App. 3d 802, 813 (1993) (affirming discovery sanction imposed against defendant because, *inter alia*, defendant's expert failed to produce records of other cases in which he had testified as an expert despite promising to do so during his deposition). Under the cramped interpretation of Rule 219(c) advocated by Dr. Traina, parties could evade their discovery obligations merely by claiming that their controlled expert is to blame for their failure to disclose discoverable information about that expert. That would encourage gamesmanship and contravene the spirit of the discovery rules.

¶ 40 Dr. Traina also argues that the trial court erred by sanctioning him for discovery abuses that Dr. Holmes allegedly committed in other proceedings (*i.e.*, Dr. Holmes's failure to disclose information in prior trials). Contrary to Dr. Traina's assertion, the sanction in this case was based on Dr. Holmes's failure to make the required disclosures in *this case*, not his alleged misconduct in other cases. The trial court addressed Dr. Holmes's conduct in other cases because it was relevant impeachment evidence that Kubicheck's counsel could have used during his cross-examination of Dr. Holmes if it had been timely disclosed. However, the court did not base its sanction on the fact that Dr. Holmes had committed discovery abuses in prior cases. Rather, it granted a new trial because it found that Dr. Holmes's discovery violations in *this* case (*i.e.*, his repeated failure to disclose a complete case list in a timely manner) put Kubicheck at an unfair advantage.

¶ 41 Dr. Traina also argues that the trial court erred in granting Kubicheck a new trial because Kubicheck was not prejudiced by Dr. Holmes's discovery violations. In support of this argument, Dr. Traina notes that Kubicheck's counsel received a list of cases from Dr. Holmes prior to the start of trial and was able to cross-examine Dr. Holmes about his prior testimony. However, as noted above, Dr. Holmes admitted during cross-examination that the list he produced was incomplete. Moreover, that partial list was produced on the eve of trial, which was too late for Kubicheck's counsel to make full use of it. Dr. Traina also argues that, during the trial court's hearing on Kubicheck's motion for a new trial, Kubicheck's counsel effectively conceded that Kubicheck had suffered no prejudice. Specifically, Dr. Traina notes that, when the trial court asked Kubicheck's counsel whether there was any specific information that would have been important to his case which he did not receive due to Dr.

Holmes's discovery violations, counsel admitted that he was not able to identify anything. We do not find this admission dispositive. Although the materials disclosed by Dr. Holmes may not have contained important information that might have changed the result of the trial, Kubicheck does not, and cannot, know what is contained in the materials Dr. Holmes has *not* disclosed. It would be unfair to require Kubicheck's counsel to identify something important or prejudicial contained in documents that were improperly withheld from him and that remain entirely within Dr. Holmes's control. See *Delvecchio*, 255 Ill. App. 3d at 200.

¶ 42        Finally, Kubicheck argues that, if we affirm the trial court's order granting a new trial, we should exercise our authority under Illinois Supreme Court Rule 366(a)(5) (eff. Feb. 1, 1994) and bar Dr. Holmes from testifying during retrial. In effect, Kubicheck asks us to reverse the trial court's July 2011 clarification order ruling that Dr. Holmes would not be barred from testifying during the retrial. There are two problems with this request. First, Kubicheck has not filed a cross-appeal of that order. "An appellee who has not prosecuted a cross-appeal cannot properly seek to modify a portion of the trial court's order in order to secure affirmative relief," and we lack jurisdiction to consider such a request. *Buccieri v. Wayne Township*, 111 Ill. App. 3d 396, 397-98 (1982); see also *Dundee Township v. Department of Revenue*, 325 Ill. App. 3d 218, 221-22 (2001). Second, the trial court's July 2011 clarification order is not in the record on appeal.[5]

¶ 43        However, even assuming *arguendo* that this court has the authority to grant the relief sought by Kubicheck under Rule 366(a)(5), it would be premature and inappropriate to do so. As noted above, the purpose of a discovery sanction under Rule 219(c) is to coerce compliance with discovery rules and orders and encourage trial on the merits, not to punish the dilatory party. *Shimanovsky*, 181 Ill. 2d at 123; *Besco*, 297 Ill. App. 3d at 782. "[J]udges may not impose sanctions that are intended primarily as punishment." *Besco*, 297 Ill. App. 3d at 782. Barring Dr. Holmes from testifying during the retrial would be a purely punitive sanction, and an onerous one at that. It would not have the effect of ensuring complete discovery or encouraging trial on the merits. To the contrary, it would result in the exclusion of the defense's only expert witness aside from Dr. Traina himself. Dr. Holmes should be given an opportunity to make a complete and timely disclosure of all relevant information before the retrial. If he fails to do so, the trial court may revisit its July 2011 order and bar him from testifying. However, it would be premature and improperly punitive to enter such a sanction at this time. The trial court's decision not to bar Dr. Holmes from testifying on retrial was not an abuse of discretion, and we will not disturb that decision.

---

[5]After he filed his PLA in this court, Dr. Traina moved to supplement the record on appeal with the trial court's July 2011 clarification order. We denied Dr. Traina's motion to supplement the record when we denied his PLA. Although we later vacated our order denying Dr. Traina's PLA, we did not vacate our denial of Dr. Traina's motion to supplement the record. Neither party subsequently moved to supplement the record with the trial court's clarification order. As a result, that order remains outside of the record on appeal.

¶ 44                        CONCLUSION

¶ 45        For the foregoing reasons, we affirm the judgment of the Peoria County circuit court.

¶ 46        Affirmed.