2020 IL App (1st) 190761-U

FOURTH DIVISION
April 30, 2020

No. 1-19-0761

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE APPELLATE COURT
OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| KIMBERLY JANSEN, | ) ) ) | Appeal from the Circuit Court of Cook County |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 15 L 8661 |
| DR. JEFFREY L. VISOTSKY, M.D., SUSAN LEWANDOWSKI, PA-C, and ILLINOIS BONE & JOINT INSTITUTE LLC, | ) ) ) ) | |
| | ) ) | Honorable James M. Varga, |
| Defendants-Appellees. | ) | Judge Presiding. |

_____

JUSTICE REYES delivered the judgment of the court.
Presiding Justice Gordon and Justice Lampkin concurred in the judgment.

**ORDER**

¶ 1    *Held*:    Affirming the judgment of the circuit court of Cook County where plaintiff failed to demonstrate the circuit court's rulings on discovery sanctions, evidentiary matters, and jury instructions constituted either an abuse of discretion or prejudicial error.

¶ 2    Plaintiff, Kimberly Jansen, brought a medical malpractice action in the circuit court of

Cook County against Dr. Jeffrey Visotsky (Dr. Visotsky); Susan Lewandowski (Lewandowski),

a physician's assistant; and Illinois Bone & Joint Institute LLC (Illinois Bone and Joint), which employed Dr. Visotsky and Lewandowski (collectively defendants). Plaintiff claimed the postsurgical antibiotics defendants prescribed to her caused her to develop a clostridium difficile (C. diff.) infection. After a contentious discovery process, the matter proceeded to trial where the jury returned a verdict in defendants' favor. The circuit court then entered a judgment on the verdict. Plaintiff now appeals, arguing that due to insufficient discovery sanctions imposed against defendants and as a result of numerous errors occurring during trial, individually or cumulatively, plaintiff did not receive a fair trial. For the following reasons, we affirm.

¶ 3                                BACKGROUND

¶ 4      This matter arose following a successful surgery performed by Dr. Visotsky to repair a fracture in plaintiff's left hand. Plaintiff's amended complaint alleged defendants negligently prescribed a postsurgical antibiotic as a prophylactic measure against infection, for an excessive period of time. Specifically, plaintiff alleged defendants prescribed 20 500-milligram capsules of Keflex to be taken one capsule at a time, four times a day for five days. She further alleged the antibiotics caused her to develop C. diff., a bacterial organism that can proliferate in an individual's intestines when antibiotics kill the "good" bacteria in the bowels. The C. diff. infection, in turn, can cause chronic diarrhea and fever. Plaintiff's C. diff. infection lasted for approximately nine months following the surgery. During this time, plaintiff experienced chronic abdominal pain, diarrhea three times per day, and the frequent sensation of having to move her bowels. The C. diff. infection required plaintiff to consult with multiple doctors and consume expensive pharmaceutical drugs in order to resolve the infection.

¶ 5                                A. Discovery

¶ 6      Prior to trial, defendants disclosed Dr. George Kasparyan (Dr. Kasparyan) as an expert

witness to testify regarding the standard of care for administering postsurgical antibiotics. Pertinent to this appeal, plaintiff propounded interrogatories requesting the basis for Dr. Kasparyan's opinions in the instant case, the titles and docket numbers of all other cases in which he was employed, the name and address of every attorney for the party for whom he was previously employed, and the terms of employment for those previous cases including the manner and amount paid. In response, defendants tendered an incomplete list of 14 case names, some of which included a docket number.

¶ 7        Plaintiff thereafter filed a motion to bar Dr. Kasparyan from testifying at trial, arguing defendants' interrogatory answers failed to include the basis of his opinions and provided insufficient information regarding his earnings in prior cases. The circuit court's motion judge entered and continued the motion and ordered defendants to supply additional information. Defendants supplemented their answers but failed to include the names and addresses of the attorneys who hired Dr. Kasparyan in many of the cases and failed to state the amounts Dr. Kasparyan was paid in each case. Plaintiff consequently filed a second motion to bar Dr. Kasparyan from testifying at trial. The circuit court continued the motion and again ordered defendants to supply additional information.

¶ 8        At Dr. Kasparyan's subsequent deposition, he confirmed that the list of cases he provided to plaintiff only included the cases in which he had given depositions in the last eight years, and did not include all cases in which he was hired as an expert but did not give a deposition. He explained that he did not keep a complete list of such cases. He acknowledged that the motion judge had ordered him to provide that information in this case, which could be determined from his 1099 tax forms, but asserted it was personal information that was not open to public scrutiny. Dr. Kasparyan answered plaintiff's inquiries concerning his income as an expert, including his

fee schedule, the percentage of his income he earned working as an expert, the amount he earned as an expert in 2016 and 2017, and the frequency he testified for a particular side. In addition, Dr. Kasparyan acknowledged that he failed to produce any documents pursuant to plaintiff's request that they be produced at his deposition.

¶ 9 At the hearing on plaintiff's motion to bar Dr. Kasparyan from testifying, the motion judge criticized defendants and Dr. Kasparyan for failing to produce documents that were within their control but declined to impose a sanction. The court expressly left that decision to the discretion of the judge presiding over the trial. Thereafter, the trial judge declined to bar Dr. Kasparyan from testifying, and instead suggested tendering a jury instruction indicating that any documents concerning the income Dr. Kasparyan earned as an expert would have been adverse to him. Plaintiff rejected the court's suggestion and requested continuing the trial until defendants complied with her discovery requests. The circuit court declined to continue the trial. Dr. Kasparyan was, however, later barred from testifying that his opinions were based on his general understanding of the medical literature as a sanction for defendants failing to disclose specific medical literature in support of his opinions.

¶ 10                                     B. Motions *in Limine*

¶ 11 Prior to trial, the circuit court granted defendants' motion *in limine* to bar plaintiff "from eliciting testimony or arguing that defendants' actions of prescribing antibiotics caused harm to the community or resulted in bacteria resistant organisms." The circuit court also barred plaintiff from eliciting testimony concerning the risk of antibiotics creating antibiotic resistant organisms, which plaintiff insisted was relevant to her theory that the standard of care required considering such risk.

¶ 12 In addition, the circuit court granted defendants' motion *in limine* to bar plaintiff "from

using the Surgical Care Improvement Project [(SCIP)] Guidelines[1] or any medical literature as substantive evidence on direct examination." The court further stated in its written order *in limine*, "Literature cannot be used as substantive evidence, but it may serve as a basis of an opinion and may be used consistent with *Wilson v. Clark*, [84 Ill. 2d 186 (1981)]."

¶ 13                                    C. Medical Malpractice Trial

¶ 14     The following evidence was adduced at trial. Plaintiff's surgery was performed on June 12, 2013, by Dr. Visotsky with assistance from Lewandowski at Golf Surgical Center, an outpatient ambulatory surgery center. Prior to the surgery, plaintiff was administered one dose of an antibiotic known as Ancef as a prophylactic measure to prevent infection. Following the surgery, defendants prescribed a five-day course of an antibiotic known as Keflex as an additional prophylactic to prevent infection. Plaintiff took the Keflex as prescribed. Over one month later, plaintiff began to experience frequent bouts of diarrhea, abdominal pain, and fever.

¶ 15     Plaintiff testified that prior to surgery, she had been taking the medication Ritalin as prescribed by her psychiatrist. On July 15, 2013, her psychiatrist doubled her dosage from 10 milligrams to 20 milligrams. Plaintiff took the increased dose on the morning of July 18, 2013, and that evening she experienced her first bout of diarrhea. She continued to experience diarrhea three times a day and chronic abdominal pain, and in September 2013 she tested positive for C. diff. A gastroenterologist prescribed medication to treat plaintiff's C. diff. infection, and she consumed the medicine as directed. Her symptoms initially subsided but returned several weeks later. Plaintiff was then prescribed the same course of medication, but her symptoms continued. In December 2013 plaintiff sought treatment from Dr. Gary Noskin (Dr. Noskin), an infectious disease specialist, who continued to treat plaintiff with the same medication. Plaintiff tested

---

[1] The SCIP guidelines are discussed further below.

negative for C. diff. in April 2014.

¶ 16    Plaintiff called defendant Dr. Visotsky, who explained that he performed an open reduction internal fixation surgery on plaintiff's left hand.  The procedure involved implanting three screws in plaintiff's hand to hold the fractured bone in place.  He further testified that he prescribed a five-day course of postsurgical antibiotics for plaintiff after weighing the risk of plaintiff developing a surgical site infection with the "extremely low" risk of her developing a C. diff. infection.  As part of that risk-benefit analysis, he considered the fact that plaintiff was a smoker, that she had Hashimoto's thyroiditis (an autoimmune disease), that she was immunocompromised by certain medications she was already taking, and that she had eczema, all of which he opined were risk factors for surgical site infections.

¶ 17    Pertinent to this appeal, plaintiff sought to apply a protocol concerning the administration of antibiotics from Lutheran General Hospital (Lutheran General), where Dr. Visotsky infrequently practiced, to plaintiff's hand surgery performed at Golf Surgical Center.  To support her theory, plaintiff elicited testimony from Dr. Visotsky that his agreement with Illinois Bone and Joint required him to comply with the policies and procedures at any hospital where he practices.  Dr. Visotsky clarified, however, that he was required to comply with certain hospitals' policies solely for the services he rendered at those hospitals.  Dr. Visotsky identified the Lutheran General antibiotic protocol, which recommended prescribing antibiotics for 24 hours following the "implantation of internal fixation devices."  According to Dr. Visotsky, the Lutheran General antibiotic protocol expressly indicated it was not based on scientific research and, in addition, the term "internal fixation devices" referred to hip screws rather than plaintiff's open reduction internal fixation surgery.  Dr. Visotsky further testified that although the Lutheran General antibiotic protocol referenced the SCIP guidelines, those guidelines were

written for outpatient surgeries and applied exclusively to the surgeries its authors studied, which did not include hand surgery.

¶ 18    Plaintiff next called Dr. Wayne Goldstein (Dr. Goldstein) as the president of Illinois Bone and Joint and the chairman of the orthopedics department at Lutheran General. Dr. Goldstein identified the Lutheran General antibiotic protocol and testified that the protocol, as well as the SCIP guidelines (on which a portion of the protocol was based) applied solely to procedures involving 24-hour inpatient stays.  In addition, he testified the Lutheran General antibiotic protocol did not apply to plaintiff's hand surgery.

¶ 19    Brett Kuhlmann, a certified physician's assistant, testified as plaintiff's expert that Lewandowski breached the standard of care by prescribing antibiotics to be taken for five days postoperatively.  His opinion was based on the SCIP guidelines, which called for discontinuing antibiotics 24 hours after surgery.  According to Kuhlmann, the SCIP guidelines were the national standard of care for antibiotic prophylaxis.  He explained that the SCIP guidelines were based on evidence gathered through the reporting of various procedures and research conducted by hospitals, care advocates, and a commission from the Centers for Medicare and Medicaid Services.  A committee subsequently created the SCIP guidelines to increase the safety of surgical patients.  Defendants objected to more extensive testimony concerning these guidelines, which the circuit court sustained.

¶ 20    On cross-examination, Kuhlmann testified he was unaware of any document indicating the SCIP guidelines applied to the type of surgery Dr. Visotsky performed in an outpatient setting.  Moreover, according to Kuhlmann, the new dose of Ritalin plaintiff took might have explained the first bout of diarrhea she experienced.

¶ 21    Dr. Terry Light (Dr. Light), plaintiff's retained expert in the field of orthopedic hand

surgery, testified regarding the standard of care for orthopedic surgeons prescribing prophylactic antibiotics. He opined that Dr. Visotsky deviated from the standard of care when he permitted Lewandowski to write a prescription for postoperative antibiotics to be taken for five days. He explained that antibiotics were only effective during the first 24 hours following surgery, and the risks did not justify exposure beyond that time.

¶ 22    Dr. Light further testified that the SCIP guidelines were part of a national initiative to diminish the frequency of postoperative infections and to set guidelines regarding the administration of prophylactic antibiotics. According to Dr. Light, although the SCIP guidelines gathered evidence primarily from hip and knee replacement surgeries, they "looked more globally at all surgeries." Defendants then objected to plaintiff's continued inquiries concerning the SCIP guidelines, which the circuit court sustained. Dr. Light subsequently testified that an orthopedic surgeon performing a hand surgery such as plaintiff's should consider the SCIP guidelines because they "were developed with a robust scientific background, and if they apply to a big implant like hip replacement, and if giving antibiotics beyond 24 hours is of no benefit and potential risk after you have had a huge hip or knee replacement, then the benefit after you have had three little screws put in your hand is miniscule."

¶ 23    Plaintiff then asked Dr. Light about the definition of the phrase "implantation of internal fixation devices." Defendants objected and explained during a sidebar that the phrase "implantation of internal fixation devices" was used in the unrelated Lutheran General antibiotic protocol, and that plaintiff intended to use Dr. Light's testimony to apply that protocol to plaintiff's surgery. In response, plaintiff's counsel stated, "that's exactly what I'm doing." Defendants further argued such an opinion was not previously disclosed, in violation of Illinois Supreme Court Rule 213 (eff. Jan 1, 2018). The circuit court sustained defendants' objection.

¶ 24    Thereafter, the jury viewed the videotaped evidence deposition of Dr. Noskin, the infectious disease specialist who treated plaintiff's C. diff. infection.  Dr. Noskin generally testified regarding his treatment of plaintiff.  In addition, he opined that plaintiff's C. diff. infection was caused by the postoperative antibiotics prescribed by defendants.  He acknowledged, however, that he could not opine whether the infection was caused by the antibiotics plaintiff took within the first 24 hours after surgery or those she took thereafter, and testified that it could have even been caused by the single preoperative dose she received.

¶ 25    Pertinent to this appeal, the circuit court had reserved defendants' objection to Dr. Noskin's standard of care testimony during a pretrial conference.  Although the circuit court did not subsequently rule on defendants' objection, the testimony was not included in the videotaped evidence deposition that was presented to the jury.  In addition, the circuit court had stricken certain causation testimony from Dr. Noskin's videotaped evidence deposition on the grounds that it was based on a misstatement of facts.  Following the videotaped evidence deposition of Dr. Noskin, plaintiff rested her case in chief.

¶ 26    Craig Baumgartner (Baumgartner), a physician's assistant, testified as an expert for defendants regarding the standard of care for the administration of postsurgical antibiotics by physician's assistants.  He opined that Lewandowski satisfied the standard of care by writing plaintiff's prescription under the authority of Dr. Visotsky.  Baumgartner further testified that the risk of an infection in the hand far outweighs the side effects of a five-day course of antibiotics, which is a standard prescription for Keflex.

¶ 27    Defendants also presented Dr. Kasparyan, an expert in the field of orthopedic hand surgery, to testify regarding the standard of care and causation.  He testified Dr. Visotsky was "well within the standard of care to consider postoperative antibiotics" based on plaintiff's risk

factors for developing a surgical site infection. Dr. Kasparyan further testified that a patient can develop C. diff. after taking one dose of antibiotics. In addition, he opined that when a C. diff. infection is caused by antibiotics, the symptoms usually occur two to five days after the antibiotics are taken. The defense then rested.

¶ 28                          D. Jury Instruction Conference

¶ 29    The circuit court conducted an initial jury instruction conference prior to trial wherein it ruled on some instructions, reserved others, and apprised the parties that it would reconsider its rulings after the close of evidence. At the final instruction conference, the circuit court noted that it had previously refused plaintiff's standard Illinois Pattern Jury Instruction for the standard of care (Illinois Pattern Jury Instruction, Civil, No. 105.01 (2018) (hereinafter IPI Civil (2018) No. 105.01)) which referred to the standard for "doctors" and had granted defendants' standard of care instruction which referred to the standard for "orthopedic hand surgeons." Plaintiff did not object. Defendants then presented the standard Illinois Pattern Jury Instruction for a sole proximate cause other than defendants' conduct (IPI Civil (2018) No. 12.05), which the circuit court granted over plaintiff's objection.

¶ 30    Plaintiff proposed an issues instruction which stated she claimed the defendants were negligent by (1) prescribing postoperative antibiotics to be taken for five days "which was excessive," and (2) failing to obtain and use certain knowledge regarding prophylactic antibiotics. The circuit court declined to tender the second portion of plaintiff's proposed issues instruction and excluded from the first portion plaintiff's assertion that the prescription was excessive.

¶ 31    At this point during the instruction conference, plaintiff moved for a directed verdict on her claim that Lewandowski was an agent of Dr. Visotsky. She additionally proposed jury

instructions regarding the agency relationship between Lewandowski and Dr. Visotsky. The circuit court declined to tender plaintiff's agency instructions and did not rule on plaintiff's motion for a directed verdict.

¶ 32                                    E. Verdict and Posttrial Motion

¶ 33    Following closing arguments, the jury returned a general verdict for all defendants and the circuit court entered a judgment on the verdict. Plaintiff filed a posttrial motion challenging the circuit court's refusal to bar Dr. Kasparyan, numerous evidentiary rulings, various jury instructions, and the circuit court's failure to rule on her motion for a directed verdict. She argued the errors, individually or cumulatively, deprived her of a fair trial. The circuit court denied the posttrial motion finding it had properly exercised its discretion and, if any error occurred, plaintiff was not denied a fair trial. This appeal followed.

¶ 34                                    ANALYSIS

¶ 35    On appeal, plaintiff raises the same claims of error that she argued in her posttrial motion and contends the errors, individually or cumulatively, warrant a new trial. We address each of her contentions in turn below and, for the following reasons, we affirm the circuit court.

¶ 36                                    A. Forfeiture

¶ 37    Prior to addressing the merits of plaintiff's appeal, we note that several of her claims have been forfeited. An alleged error is not preserved for review and is forfeited if the trial court fails to rule upon it. *PNC Bank, National Ass'n v. Wilson*, 2017 IL App (2d) 151189, ¶ 29; *McCullough v. Gallaher & Speck*, 254 Ill. App. 3d 941, 946 (1993). Moreover, a party forfeits any objection to a jury instruction by failing to object to it at the instruction conference. *Burmac Metal Finishing Co. v. West Bend Mutual Insurance Co.*, 356 Ill. App. 3d 471, 484 (2005).

¶ 38    On appeal, plaintiff contends the circuit court abused its discretion by striking Dr.

Noskin's evidence deposition testimony regarding the appropriate standard of care. Our review of the record reveals, however, that the circuit court did not rule on defendants' objection to Dr. Noskin's evidence deposition testimony. Although Dr. Noskin's testimony concerning the standard of care was not included in the videotaped evidence deposition viewed by the jury, plaintiff has forfeited her argument by failing to obtain a ruling on defendants' objection. See *PNC Bank, National Ass'n*, 2017 IL App (2d) 151189, ¶ 29; *McCullough*, 254 Ill. App. 3d at 946.

¶ 39    Plaintiff additionally argues the circuit court erred by refusing her standard of care jury instruction. The record demonstrates that although the circuit court initially ruled in favor of defendants' instruction during its initial jury instruction conference, the court apprised the parties that it would reconsider its rulings at a final jury instruction conference prior to closing arguments. Subsequently, the circuit court reviewed the jury instructions after closing arguments, and plaintiff failed to contest defendants' standard of care instruction at that time. Accordingly, plaintiff has forfeited this claim. See *Burmac Metal Finishing Co.*, 356 Ill. App. 3d at 484.

¶ 40    Finally, plaintiff maintains the circuit court did not rule on her motion for a directed verdict on her claim that Lewandowski was an agent of Dr. Visotsky. Because plaintiff failed to obtain a ruling, she has forfeited this issue. See *PNC Bank, National Ass'n*, 2017 IL App (2d) 151189, ¶ 29; *McCullough*, 254 Ill. App. 3d at 946. We now turn to consider those claims properly preserved for our review.

¶ 41                                B. Standard of Review

¶ 42    On appeal, plaintiff challenges the circuit court's refusal to bar Dr. Kasparyan as a discovery sanction, various evidentiary rulings, and several jury instructions. The resolution of

these issues rests solely within the discretion of the circuit court and will not be disturbed absent an abuse of that discretion. See *Heastie v. Roberts*, 226 Ill. 2d 515, 543 (2007) (reviewing the trial court's decision as to which jury instructions to use); *Cetera v. DiFilippo*, 404 Ill. App. 3d 20, 36-37 (2010) (reviewing the trial court's decision to admit or exclude evidence); *Warrender v. Millsop*, 304 Ill. App. 3d 260, 268 (1999) (reviewing the trial court's decision not to bar a witness from testifying as a discovery sanction). The trial court abuses its discretion only when its decision is "arbitrary, fanciful or unreasonable [citation] or where no reasonable person would agree with the position adopted by the trial court." (Internal quotation marks omitted.) *Kubicheck v. Traina*, 2013 IL App (3d) 110157, ¶ 30.

¶ 43                               C. Motion to Bar

¶ 44    Plaintiff contends the circuit court abused its discretion by refusing to bar Dr. Kasparyan from testifying or continuing the trial after defendants failed to comply with certain discovery requests and orders regarding him. She specifically maintains (1) defendants' failure to produce information regarding Dr. Kasparyan's earnings as an expert in previous cases precluded her from determining whether he was biased, and (2) she was unable to effectively depose Dr. Kasparyan without the documents he was requested to produce at his deposition, namely those supporting the basis of his opinions.

¶ 45    In response, defendants contend plaintiff forfeited her claim of error concerning the motion to bar Dr. Kasparyan from testifying. According to defendants, plaintiff failed to renew her objection when Dr. Kasparyan was called to testify. Defendants additionally argue the circuit court did not abuse its discretion because (1) Dr. Kasparyan did not keep detailed records, including financial information, regarding the prior cases in which he was hired as an expert, (2) Dr. Kasparyan provided sufficient information about his income generated as an expert

witness during his deposition, and (3) plaintiff's extensive request unnecessarily invaded Dr. Kasparyan's privacy.

¶ 46    We first address whether plaintiff forfeited her claim. To preserve an issue for appellate review, a party must make a timely objection. *Spurgeon v. Mruz*, 358 Ill. App. 3d 358, 360 (2005). Generally, timeliness requires that objections to evidence be made at the time the evidence is offered or as soon as the grounds for the objection become apparent. *Id*. An objection need not be repeated, however, each time similar matters are presented where the court has previously ruled. *Cetera*, 404 Ill. App. 3d at 33. Here, the record reveals that during a pretrial conference, the circuit court repeatedly stated it would not bar Dr. Kasparyan from testifying. Moreover, during a sidebar immediately preceding Dr. Kasparyan's testimony, the circuit court ruled on plaintiff's motion by barring the expert from providing certain testimony. Accordingly, we find plaintiff has properly preserved her motion to bar. See *id*. We now consider the merits of that motion.

¶ 47    On appeal, plaintiff argues the sanction imposed by the circuit court was not sufficiently severe. The issue presented here, therefore, is whether the sanction imposed by the circuit court was appropriate under the circumstances. Illinois Supreme Court Rule 219 (eff. July 1, 2002) addresses the consequences of a party's refusal or failure to comply with rules or court orders regarding discovery. Rule 219 authorizes the circuit court to impose a sanction against "any party who unreasonably refuses to comply with any provisions of [the] court's discovery rules or any order entered pursuant to these rules." *Shimanovsky v. General Motors Corp.*, 181 Ill. 2d 112, 120 (1998). A just order of sanctions is one which ensures both discovery and a trial on the merits. *Wakefield v. Sears, Roebuck and Co.*, 228 Ill. App. 3d 220, 226 (1992). The purpose of the sanction is not to punish the offending party, but to coerce compliance with the discovery

rules and orders. *Shimanovsky*, 181 Ill. 2d at 123. Barring a witness is a drastic sanction which should be imposed sparingly. *Rosen v. Larkin Center, Inc.*, 2012 IL App (2d) 120589, ¶ 18.

¶ 48    In determining whether the circuit court abused its discretion in imposing a sanction, a reviewing court looks to the same factors that the circuit court is required to consider in deciding an appropriate sanction: (1) the surprise to the adverse party; (2) the prejudicial effect of the proffered evidence; (3) the nature of the testimony or evidence; (4) diligence of the adverse party in seeking discovery; (5) the timeliness of the adverse party's objection to the testimony or evidence; and (6) the good faith of the party offering the evidence. *Peal v. Lee*, 403 Ill. App. 3d 197, 203 (2010). No single factor is determinative and each case presents a unique factual scenario that bears on the propriety of a particular sanction. *Smith v. P.A.C.E.*, 323 Ill. App. 3d 1067, 1076 (2001).

¶ 49    As a sanction for defendants' failure to disclose the specific basis of Dr. Kasparyan's opinions, the circuit court barred him from testifying that his opinions were based on his general understanding of the medical literature. After considering the factors discussed above, we cannot say the circuit court's refusal to bar Dr. Kasparyan from testifying was arbitrary or fanciful, or that no reasonable person would agree with the court's decision. See *Kubicheck*, 2013 IL App (3d) 110157, ¶ 30. First, plaintiff experienced no surprise from defendants' discovery violations. See *Peal*, 403 Ill. App. 3d at 203. Dr. Kasparyan provided information during his deposition and at trial concerning his earnings as an expert. Moreover, defendants did not surprise plaintiff with any medical literature in support of Dr. Kasparyan's opinions.

¶ 50    Second, plaintiff experienced no prejudice. See *id.* Because Dr. Kasparyan provided information during his deposition and at trial about the earnings he generated as an expert, plaintiff was able to probe him for bias. See *Pontiac National Bank v. Vales*, 2013 IL App (4th)

111088, ¶ 17 (parties may cross-examine an expert witness about the amount and percentage of income that he generates from his work as an expert witness, the frequency with which he testifies as an expert, and the frequency with which he testifies for a particular side in order to expose any bias, partisanship, or financial interest that may taint his testimony and opinions). In addition, defendants did not present any undisclosed medical literature to support Dr. Kasparyan's opinion.

¶ 51    Third, because plaintiff experienced no surprise or prejudice, we find the nature of the evidence—evidence that was probative of bias and evidence supporting Dr. Kasparyan's opinions—did not warrant barring the expert. See *Peal*, 403 Ill. App. 3d at 203. The next two factors weigh in plaintiff's favor: she was diligent in seeking discovery and timely objected to Dr. Kasparyan's testimony. See *id.* As for the last factor, there is no indication in the record that defendants acted in bad faith. See *id.* Thus, although two of the factors weighed in plaintiff's favor, the most important factors, including surprise, prejudice, and the nature of the evidence (see *Curran Contracting Co. v. Woodland Hills Development Co.*, 235 Ill. App. 3d 406, 411-12 (1992)) supported the circuit court's sanction. See *Peal*, 403 Ill. App. 3d at 203. Accordingly, we conclude the circuit court did not abuse its discretion and issued an appropriate sanction in this case. See *Kubicheck*, 2013 IL App (3d) 110157, ¶ 30; *Peal*, 403 Ill. App. 3d at 203; *Warrender*, 304 Ill. App. 3d at 268.

¶ 52                              D. Evidentiary Rulings

¶ 53    Plaintiff challenges several of the circuit court's evidentiary rulings that excluded certain evidence. We address each argument in turn.

¶ 54                    1. Evidence Regarding Antibiotic Resistant Organisms

¶ 55    Plaintiff contends the circuit court abused its discretion when it barred her from

introducing evidence concerning the development of antibiotic resistant organisms. According to plaintiff, such evidence was relevant to the standard of care, which required defendants to consider the risk that their prescription might create antibiotic resistant organisms and contribute to a worldwide crisis.

¶ 56    In professional negligence cases, the plaintiff bears the burden of establishing the standard of care through expert witness testimony. *Advincula v. United Blood Services*, 176 Ill. 2d 1, 24 (1996); *Somers v. Quinn*, 373 Ill. App. 3d 87, 90 (2007). On appeal, plaintiff fails to point to any expert who would have supported her standard of care theory. Nevertheless, our review of the record confirms that none of plaintiff's experts indicated the standard of care in this case required defendants to consider the risk that their prescription for antibiotics might create antibiotic resistant organisms. Moreover, plaintiff fails to demonstrate that evidence concerning antibiotic resistant organisms is relevant to any other issue presented in this matter. See *Smith v. Sliver Cross Hospital*, 339 Ill. App. 3d 67, 73-74 (2003); Ill. R. Evid. 401 (eff. Jan. 1, 2011). Accordingly, the circuit court did not abuse its discretion by barring such evidence. See *Cetera*, 404 Ill. App. 3d at 36-37.

¶ 57                          2. Dr. Noskin's Causation Testimony

¶ 58    Plaintiff next contends the circuit court erroneously struck testimony from Dr. Noskin's videotaped evidence deposition based on defendants' objection at trial. Plaintiff argues defendants waived the basis of their objection by objecting on other grounds during the videotaped evidence deposition.

¶ 59    The issue presented here revolves around whether or not defendants made a proper objection to Dr. Noskin's evidence deposition testimony. Rule 211(c)(1) addresses the topic of objections during depositions and states,

"Grounds of objection to the competency of the deponent or admissibility of testimony which might have been corrected if presented during the taking of the deposition are waived by failure to make them at that time; otherwise objections to the competency of the deponent or admissibility of testimony may be made when the testimony is offered into evidence." Ill. S. Ct. R. 211(c)(1) (eff. Jan. 1, 1967).

"The crucial phrase here is 'might have been corrected if presented during the taking of the deposition.' " *Somers*, 373 Ill. App. 3d at 97 (quoting Ill. S. Ct. R. 211(c)(1) (eff. Jan. 1, 1967)). Moreover, "[a] party should not be allowed to remain silent at the deposition and then object at trial." *Lundell v. Citrano*, 129 Ill. App. 3d 390, 398 (1984). "A party complaining of defects in a hypothetical question or answer must point them out in order to afford the interrogator an opportunity to remedy the defects." *Moore v. Jewel Tea Co.*, 116 Ill. App. 2d 109, 131 (1969) (affirmed by *Moore v. Jewel Tea Co.*, 46 Ill. 2d 288, 299-300 (1970)).

¶ 60    Defendants here objected at Dr. Noskin's evidence deposition to the question, "if, in fact, [plaintiff] had *no other antibiotics from the time—from prior to the surgery up until she contracted the infection*, would it be your impression or opinion to a reasonable degree of medical certainty that the antibiotic[s] that she received following that surgery caused her infection?" (Emphasis added.) Dr. Noskin responded affirmatively stating, "If that's the only course of antibiotics, then that would be more likely than not." Defendants then objected based on the form of the question. At trial, however, defendants objected on the grounds that the question misstated the facts because plaintiff had received a preoperative dose of antibiotics.

¶ 61    Regardless of the misstatement of fact in plaintiff's question, defendants were required to object on that basis during Dr. Noskin's evidence deposition in order to afford plaintiff the opportunity to remedy the defect by conforming the question to the facts of the case. See *Moore*,

116 Ill. App. 2d at 131; Ill. S. Ct. R. 211(c)(1) (eff. Jan. 1, 1967); see also *Somers*, 373 Ill. App. 3d at 97; *Lundell*, 129 Ill. App. 3d at 398.  The circuit court therefore erred in sustaining defendants' objection at trial.  See *id*.

¶ 62     Our analysis, however, does not end there.  "[I]t is axiomatic that error in the exclusion or admission of evidence does not require reversal unless one party has been prejudiced or the result of the trial has been materially affected."  (Internal quotation marks omitted.)  *Cetera*, 404 Ill. App. 3d at 36.  Here, plaintiff was not prejudiced by the exclusion of Dr. Noskin's proffered testimony.  Because the question posed by plaintiff was not based on the evidence, it was of little probative value.  Specifically, the jury knew plaintiff received a preoperative dose of antibiotics and learned that even one dose of antibiotics can make an individual susceptible to C. diff.  Thus, Dr. Noskin's opinion as to the cause of plaintiff's C. diff. infection based on hypothetical facts was irrelevant.  In addition, plaintiff elicited testimony from Dr. Noskin that plaintiff's infection was caused by the antibiotics defendants prescribed.  Accordingly, we cannot say the result of the trial was materially affected, and reversal therefore is not warranted.  See *id*.

¶ 63                     3. Evidence Concerning the SCIP Guidelines

¶ 64     Plaintiff next contends the circuit court abused its discretion when it limited her experts' testimony concerning the SCIP guidelines.  She argues her experts were prevented from explaining why the SCIP guidelines were a reliable basis for their standard of care opinions.  Plaintiff specifically asserts that she was prevented from inquiring of Dr. Light (1) what the SCIP guidelines were for hip and knee replacement surgeries, and (2) how the SCIP guidelines were "set up" in terms of gathering evidence.  She further maintains the circuit court improperly sustained defendants' objection to her inquiry to Kuhlmann regarding whether "various studies were conducted" to support the SCIP guidelines.

¶ 65    Generally, scientific and medical treatises are hearsay and are therefore inadmissible as proof of the statements contained therein. *Lewis v. Stoval*, 272 Ill. App. 3d 467, 470 (1995). However, where the underlying data sought to be introduced is of the sort that is typically relied upon by experts in forming opinions, the expert may reveal the data, not as substantive evidence, but for the limited purpose of explaining the expert's opinion. *City of Chicago v. Anthony*, 136 Ill. 2d 169, 185 (1990); *Solis v. BASF Corp.*, 2012 IL App (1st) 110875, ¶ 83; Ill. R. Evid. 703 (eff. Jan. 1, 2011).  In such circumstances, the information underlying the expert's opinion does not constitute hearsay because it is not admitted for its truth, but only for the limited purpose of explaining the basis of the expert witness's opinion. *Grauer v. Clare Oaks*, 2019 IL App (1st) 180835, ¶ 75.  The trial court need not allow an expert to recite the facts or data underlying his opinion when the probative value in explaining the opinion is outweighed by its likely prejudicial impact or tendency to create confusion. *City of Chicago*, 136 Ill. 2d at 185.

¶ 66    Here, the risk of confusion and prejudice was amply demonstrated where (1) plaintiffs' experts provided substantial testimony concerning the SCIP guidelines, and (2) plaintiff attempted to rely on the SCIP guidelines as substantive evidence during her opening statement and closing argument.  See *id*; *Rios v. City of Chicago*, 331 Ill. App. 3d 763, 772 (2002). Kuhlmann testified that the national standard of care for antibiotic prophylaxis for all surgeries—both inpatient and outpatient—was the SCIP guidelines, which called for discontinuing antibiotics 24 hours after surgery.  He further testified the SCIP guidelines were based on evidence gathered through the reporting of various procedures and research conducted by hospitals, care advocates, and a commission from the Centers for Medicare and Medicaid Services.  He explained that a committee then used the data to create the SCIP guidelines to increase the safety of surgical patients.  Dr. Light subsequently testified the SCIP guidelines

were part of a national initiative to diminish the frequency of postoperative infections and set guidelines for the use of prophylactic antibiotics. He additionally testified the SCIP guidelines were developed with a "robust scientific background;" they were created to gather evidence on the effectiveness of postoperative antibiotics; and they gathered evidence in multiple surgical procedures, although they "looked more globally at all surgeries." Dr. Light even testified that if the SCIP guidelines apply to hip and knee replacement surgeries, and there is no benefit to giving antibiotics 24 hours after such surgeries, then the benefit after placing three screws in the hand is "miniscule." Furthermore, in closing argument plaintiff asserted that the policy at Golf Surgical Center was governed by the SCIP guidelines and those guidelines were "the prevailing guidelines that govern all surgeries." See *id.* The record therefore demonstrates there was a risk that the jury might consider the SCIP guidelines as substantive evidence. See *id.* Accordingly, the circuit court's decision to limit testimony concerning the SCIP guidelines was not arbitrary or fanciful so as to constitute an abuse of discretion. See *Kubicheck*, 2013 IL App (3d) 110157, ¶ 30; *Cetera*, 404 Ill. App. 3d at 36-37.

¶ 67    In addition, the record reveals that the SCIP guidelines were not introduced to explain the basis of Dr. Light's opinions, but rather to bolster and confirm his testimony. See *Solis*, 2012 IL App (1st) 110875, ¶ 83 (reference to a case report was improper where the only purpose was to bolster the expert's opinion by demonstrating that other doctors had previously reached the same conclusion). Before providing testimony regarding the SCIP guidelines, Dr. Light testified to the standard of care, that Dr. Visotsky deviated from the standard of care, and the basis for his opinion. In explaining his basis, Dr. Light did not reference the SCIP guidelines. Plaintiff then commenced several separate lines of questioning before inquiring as to the various studies that gathered evidence concerning the effectiveness of antibiotic prophylaxis, specifically the SCIP

guidelines. Prior to defendants' objections, at no time during Dr. Light's testimony regarding the SCIP guidelines did he state they were a basis for his opinion. Accordingly, for this additional reason the circuit court did not abuse its discretion in limiting Dr. Light's testimony concerning the SCIP guidelines. See *id*; *Cetera*, 404 Ill. App. 3d at 36-37.

¶ 68          4. Testimony Concerning the Implantation of Internal Fixation Devices

¶ 69    Plaintiff next contends the circuit court abused its discretion when it barred Dr. Light from defining the phrase "implantation of internal fixation devices" based on defendants' objection that the testimony was not previously disclosed in violation of Rule 213. She argues Dr. Light's testimony would have been a logical corollary to the opinions disclosed in his 213(f)(3) response. Plaintiff further argues that the testimony was relevant because Illinois Bone and Joint required Dr. Visotsky to abide by Lutheran General protocols, which in turn required him to discontinue antibiotics 24 hours following a surgery involving the "implantation of internal fixation devices."

¶ 70    In response, defendants argue the circuit court did not abuse its discretion because plaintiff did not previously disclose Dr. Light's opinions regarding the Lutheran General antibiotic protocol. Defendants further contend (1) there was no testimony indicating the Lutheran General antibiotic protocol applied to outpatient hand surgeries at Golf Surgical Center, where plaintiff's operation was performed, and (2) plaintiff cannot demonstrate prejudice.

¶ 71    Rule 213(f)(3) requires parties to furnish, among other things, the subject matter, conclusions, and opinions of controlled expert witnesses who will testify at trial. Ill. S. Ct. R. 213(f)(3) (eff. Jan. 1, 2018). Rule 213 disclosures are mandatory and subject to strict compliance. *Sullivan v. Edward Hospital*, 209 Ill. 2d 100, 109 (2004). Rule 213(g) limits expert opinions at trial to "[t]he information disclosed in answer to a Rule 213(f) interrogatory, or in a

discovery deposition." Ill. S. Ct. R. 213(g) (eff. Jan. 1, 2018). "A witness may elaborate on a disclosed opinion as long as the testimony states logical corollaries to the opinion, rather than new reasons for it." *Foley v. Fletcher*, 361 Ill. App. 3d 39, 47 (2005).

¶ 72    Here, plaintiff maintains Dr. Light's opinion regarding the definition of the phrase "internal fixation devices" was a logical corollary to his disclosed opinion "that the standard of care for antibiotic prophylaxis is similar for orthopedic surgeries involving implantation of foreign materials such as hip replacement surgeries and open reduction internal fixation surgeries of the hand and other parts of the person."[2]  The record reveals, however, that plaintiff was not merely seeking a definition of the phrase "internal fixation devices."  Plaintiff conceded she intended to use Dr. Light to lay a foundation for the Lutheran General antibiotic protocol and apply it to plaintiff's hand surgery.  Indeed, plaintiff's argument on appeal supports the conclusion that she sought Dr. Light's opinion regarding the application of the Lutheran General antibiotic protocol.  Because such an opinion was unrelated to Dr. Light's disclosed opinion, it was required to be disclosed.  See *Sullivan*, 209 Ill. 2d at 109; *Foley*, 361 Ill. App. 3d at 47; Ill. S. Ct. R. 213(f)(3), (g) (eff. Jan. 1, 2018).  Plaintiff does not dispute that she failed to disclose any opinions concerning the Lutheran General antibiotic protocol.  Accordingly, the circuit court did not abuse its discretion by barring Dr. Light's testimony.  See *id*; *Cetera*, 404 Ill. App. 3d at 36-37.

¶ 73                                    E. Jury Instructions

¶ 74    Plaintiff contends the circuit court abused its discretion by (1) tendering defendants' jury instruction for a sole proximate cause of plaintiff's injuries other than defendants' conduct, (2) refusing her issues instruction, and (3) refusing her instruction directing the jury to determine

_____

[2] We note that Dr. Light's 213(f)(3) disclosures are not contained in the record.  Defendants, however, do not refute plaintiff's purported disclosure.

whether Lewandowski was an agent of Dr. Visotsky. We address each claim below.

¶ 75                                    1. Sole Proximate Cause Instruction

¶ 76     Plaintiff argues the circuit court improperly tendered a jury instruction on the sole proximate cause, which stated, "if you decide that the sole proximate cause of injury to the plaintiff was something other than the conduct of the defendants, then your verdict should be for the defendants." See IPI Civil (2018) No. 12.05. According to plaintiff, the sole proximate cause instruction was improper because "there was no evidence presented in this case that anything other than defendants' negligence was the proximate cause of plaintiff's injury." For the reasons discussed below, we disagree.

¶ 77     The sole proximate cause instruction is appropriate where there is evidence that something other than the defendants' negligent conduct was the sole proximate cause of the plaintiff's injury. *McDonnell v. McPartlin*, 192 Ill. 2d 505, 519 (2000). An instruction is properly tendered to the jury where it is supported by some evidence (*Krklus v. Stanley*, 359 Ill. App. 3d 471, 492 (2005)), even where that evidence is slight (*Leonardi v. Loyola University of Chicago*, 168 Ill. 2d 83, 100 (1995)), insubstantial (*Heastie*, 226 Ill. 2d at 543), or unpersuasive (*Ready v. United/Goedecke Services, Inc.*, 238 Ill. 2d 582, 591 (2010)). The threshold for giving an instruction in a civil case therefore is not a high one. *Heastie*, 226 Ill. 2d at 543.

¶ 78     Here, our review of the record reveals that defendants adduced evidence supporting two theories that something other than defendant's alleged negligent conduct could have been the sole proximate cause of plaintiff's C. diff. infection. Accordingly, the circuit court did not abuse its discretion when it provided IPI Civil (2018) No. 12.05. See *id.*

¶ 79     First, defendants adduced expert testimony demonstrating that the preoperative dose of antibiotics defendants administered or the doses plaintiff received during the first 24 hours

following her surgery—all of which plaintiff concedes were within the standard of care for defendants to prescribe—could have caused plaintiff's C. diff. infection. Specifically, Dr. Noskin and Dr. Kasparyan testified that one dose of antibiotics can lead to a C. diff. infection. Dr. Goldstein similarly testified that patients can develop C. diff. after taking antibiotics for 24 hours. Dr. Noskin additionally testified that he "cannot opine for [plaintiff] whether or not her C. difficile infection, if it was caused by an antibiotic, was caused by one dose given preoperatively or a dose given within the first 24 hours [after surgery] or a dose given after the first 24 hours," and that "there is no clear evidence that [the] duration of antibiotics increases the incidence of C. difficile infections." Because evidence was presented that other antibiotics administered to plaintiff could have caused her C. diff. infection, the sole proximate cause instruction was proper. See *McDonnell*, 192 Ill. 2d at 519.

¶ 80    Second, defendants adduced evidence suggesting plaintiff's increased dose of Ritalin could have caused her first bout of diarrhea, which in turn could have caused her C. diff. infection. Specifically, plaintiff testified her diarrhea began the evening she took her increased dose of Ritalin. Kuhlmann testified that the increased dose "might explain the diarrhea that she had on that day." Dr. Noskin testified that an individual can become predisposed to C. diff. infections from changes in the intestines, and that diarrhea, independent of the cause, "can change the gut flora." He further testified "[i]t's possible" that "a case of diarrhea [can] allow bacteria such as C. difficile that are present in the patient's gut to proliferate." In addition, Dr. Noskin testified that C. diff. infections most commonly occur "while somebody is currently on the antibiotics or shortly thereafter," indicating that because of the timing of plaintiff's symptoms, her infection might not have resulted from the antibiotics. Furthermore, Dr. Kasparyan testified that "C. difficile will affect a patient's gut when there is some type of

irritation in the gut," and that "usually the presentation of C. difficile and the symptoms of infection will occur anywhere from two days to five days after [a regimen of antibiotics]. It is uncharacteristic for an infection related to antibiotics to occur 30 to 35 days later." Because evidence was presented that plaintiff's C. diff. infection could have been caused by an unrelated bout of diarrhea brought on by other medication, the sole proximate cause instruction was proper for this additional reason. See *id.*

¶ 81                                   2. Issues Instruction

¶ 82     Plaintiff next contends the circuit court abused its discretion by refusing to tender her proposed issues instruction. Her proposed instruction stated the following:

> "The plaintiff claims that she was injured and sustained damage, and that the defendants were negligent in one or more of the following respects:
>
> (a) Prescribed to [plaintiff] twenty 500 milligram capsules of Keflex also known as cephalexin to be taken one capsule at a time, four times per day for five consecutive days, which was an excessive duration and amount of antibiotic for the purpose of prophylaxis.
>
> (b) Failed to obtain, possess and use required knowledge regarding the necessity and effectiveness of post-operative antibiotic prophylaxis.
>
> (c) Failed to obtain, possess and use knowledge of the dangers of unnecessarily prescribing antibiotics for the purpose of post-operative prophylaxis.
>
> The plaintiff further claims that one or more of the foregoing was a proximate cause of her injuries."

Instead, the circuit court tendered the following issues instruction to the jury:

> "The plaintiff claims that she was injured and sustained damages and that the defendants

were negligent in the following respect:

Prescribed to [plaintiff] twenty 500 milligram tablets of Keflex also known as cephalexin

to be taken one capsule at a time, four times per day for five consecutive days.

The plaintiff further claims that this was a proximate cause of her injuries."

¶ 83    Plaintiff argues the circuit court improperly concluded the term "excessive" in part (a) of her proposed issues instruction was unnecessarily argumentative.  She further maintains the circuit court improperly concluded that she failed to support parts (b) and (c) of her proposed issues instruction with expert testimony.  According to plaintiff, a layman could understand the theories set forth in parts (b) and (c) of her proposed issues instruction and she therefore was not required to support them with expert testimony.  In response, defendants contend the issues instruction tendered by the circuit court adequately instructed the jury on plaintiff's theories.  They further argue parts (b) and (c) of plaintiff's proposed issues instruction were redundant because they were "part and parcel" of the alleged negligence described in part (a).

¶ 84    The parties to a lawsuit are entitled to have the jury instructed on their theories of the case, provided there is some evidence to support each theory.  *Meister v. Henson*, 253 Ill. App. 3d 619, 627 (1993).  The issues instruction is intended to inform the jury of the plaintiff's claims and the defendant's responses.  *Howat v. Donelson*, 305 Ill. App. 3d 183, 186 (1999).  IPI Civil (2018) No. 20.01 requires the plaintiff and the defendant to "set forth in simple form without undue emphasis or repetition" the allegations of the defendant's negligence.  *Id*.  The issues instruction must, in a clear, concise and comprehensive manner, inform the jury what material facts must be found to recover.  *Howat*, 305 Ill. App. 3d at 187.  "An issues instruction is proper as long as it is succinctly stated without undue repetition."  *Meister*, 253 Ill. App 3d at 627.

¶ 85    The test for determining whether the jury was properly instructed is whether, taken as a

whole, the instructions were clear enough so as not to mislead the jury and whether they fairly and accurately stated the law. *Burmac Metal Fishing Co.*, 356 Ill. App. 3d at 483. However, even where the jury instructions accurately state the law, they should not be given if they are argumentative or misleading. *Swartz v. Sears, Roebuck and Co.*, 264 Ill. App. 3d 254, 267 (1993). "[T]he standard for reversing a judgment based on failure to permit an instruction is high;" a new trial will be granted for the trial court's refusal to tender a proposed jury instruction only where serious prejudice to a party's right to a fair trial has been demonstrated. *Heastie*, 226 Ill. 2d at 543.

¶ 86     We first address part (a) of plaintiff's proposed issues instruction which stated her prescription was "excessive." The alleged "excessive" duration of antibiotics is not a fact that the jury was required to find in order for plaintiff to recover (see *Howat*, 305 Ill. App. 3d at 187); plaintiff was required to prove only that prescribing five days of antibiotics was negligent. See *Mengelson v. Ingalls Health Ventures*, 323 Ill. App. 3d 69, 74 (2001). The circuit court's issue instruction properly apprised the jury on plaintiff's theory that defendants were negligent by prescribing five days of antibiotics and that this negligence proximately caused plaintiff's injuries. See *Meister*, 253 Ill. App. 3d at 627; see also *Howat*, 305 Ill. App. 3d at 186-87. Thus, labeling the alleged negligent prescription as "excessive" served no purpose and was argumentative. Indeed, the gravamen of plaintiff's closing argument was that defendants were *negligent* in prescribing five days of antibiotics *because such a prescription was excessive*. Accordingly, the jury was properly instructed and the circuit court did not abuse its discretion by tendering its issues instruction. See *Burmac Metal Fishing Co.*, 356 Ill. App. 3d at 483; *Swartz*, 264 Ill. App. 3d at 267.

¶ 87     We next address plaintiff's contention that the circuit court abused its discretion by

excluding parts (b) and (c) from her proposed issues instruction. As stated above, these portions of plaintiff's proposed instruction stated defendants were negligent by failing to obtain, possess, and use certain knowledge pertaining to the use of antibiotics. On appeal, plaintiff fails to address the circuit court's refusal to tender her issues instruction on the grounds that parts (b) and (c) of the instruction were "subsumed" by part (a), especially in light of IPI Civil (2018) No. 105.01 regarding the standard of care in a professional negligence case, which was read to the jury. Nevertheless, we agree with the circuit court. The instruction based on IPI Civil (2018) No. 105.01 stated "[a]n orthopedic hand surgeon must possess and use the knowledge, skill, and care ordinarily used by a reasonably careful orthopedic hand surgeon. The failure to do something that a reasonably careful orthopedic hand surgeon would do, or the doing of something that a reasonably careful orthopedic hand surgeon would not do, under the circumstances similarly shown by the evidence, is 'professional negligence.' " When IPI Civil (2018) No. 105.01 and the circuit court's issues instruction were both read and tendered to the jury, the allegation in the issues instruction—that defendants negligently prescribed five days of antibiotics—implicitly included the allegation that the negligent act was done without the "knowledge, skill, and care ordinarily used by a reasonably careful orthopedic hand surgeon," as instructed in IPI Civil (2018) No. 105.01. The allegations in parts (b) and (c) of plaintiff's proposed issues instruction were therefore incorporated into the issues instruction given by the circuit court. Thus, the circuit court's issues instruction informed the jury of plaintiff's theory of the case and accurately stated the law. See *Burmac Metal Fishing Co.*, 356 Ill. App. 3d at 483; *Meister*, 253 Ill. App 3d at 627. Accordingly, the circuit court did not abuse its discretion. See *Heastie*, 226 Ill. 2d at 543.

¶ 88                                    3. Agency Instruction

¶ 89    Plaintiff next contends the circuit court abused its discretion by declining to tender her proposed jury instructions directing the jury to determine whether Lewandowski was an agent of Dr. Visotsky.  In response, defendants argue plaintiff failed to demonstrate prejudice, and reversal therefore is not warranted.  We agree with defendants.

¶ 90    Assuming *arguendo* that the circuit court erred by failing to tender plaintiff's proposed jury instructions concerning the agency relationship between Lewandowski and Dr. Visotsky, plaintiff cannot demonstrate she would be entitled to a new trial.  Plaintiff failed to request special interrogatories to determine the basis of the jury's finding and the jury returned a general verdict for all defendants.  See *Lazenby v. Mark's Construction, Inc.*, 236 Ill. 2d 83, 101-02 (2010); *Strino v. Premier Healthcare Associates, P.C.*, 365 Ill. App. 3d 895, 904-05 (2006). "When there is a general verdict and more than one theory is presented, the verdict will be upheld if there was sufficient evidence to sustain either theory, and the [moving party], having failed to request special interrogatories, cannot complain."  (Internal quotation marks omitted.) *Lazenby*, 236 Ill. 2d at 101; see also *Arent v. Alhaj-Hussein*, 2017 IL App (1st) 162369, ¶ 44. Moreover, where a defendant raises two defenses and special interrogatories have not been submitted to the jury, a general verdict creates a presumption that the jury found in favor of the defendant on both of the defenses.  *Strino*, 365 Ill. App. 3d at 904.

¶ 91    Here, defendants presented two theories of defense: (1) their conduct was not negligent; and (2) their alleged negligent conduct did not proximately cause plaintiff's injuries.  Because plaintiff failed to submit special interrogatories, we must presume the jury found in favor of both theories.  See *id*.  In addition, plaintiff has not argued that the jury's verdict was against the manifest weight of the evidence.  See *Lazenby*, 236 Ill. 2d at 101.  Thus, even if the jury determined that Lewandowski was an agent of Dr. Visotsky, (1) there was no liability to impute

onto Dr. Visotsky, and (2) the alleged negligence which could have been imputed was not a proximate cause of plaintiff's injuries. See *id*. Accordingly, assuming the circuit court erred, the error would have had no effect on the verdict and plaintiff would not be entitled to a new trial. See *id*. at 101-02; *Strino*, 365 Ill. App. 3d at 904-05.

¶ 92                                    F. Cumulative Error

¶ 93    Plaintiff's final contention on appeal is that the cumulative effect of the circuit court's alleged erroneous rulings denied her a fair trial. Litigants are not entitled to error-free trials, but only fair trials free from substantial prejudice. *Taylor v. County of Cook*, 2011 IL App (1st) 093085, ¶ 86; *Perry v. Murtagh*, 278 Ill. App. 3d 230, 240 (1996). A new trial is warranted only when the cumulative effect of trial errors deprived a party of a fair trial such that the verdict might have been affected. *Id*.

¶ 94    As discussed above, nearly all the challenged rulings were either proper or well within the circuit court's discretion, and none of the alleged errors required reversal in this case. Looking at the matters cumulatively, the record reveals that the trial, taken as a whole, was fair. Plaintiff was free to present her case within the proper bounds set by the circuit court's rulings. See *Cetera*, 404 Ill. App. 3d at 47. Plaintiff has failed to demonstrate that any error or collection of errors affected the outcome of the case such that a new trial is required. See *Taylor*, 2011 IL App (1st) 093085, ¶ 86.

¶ 95                                    CONCLUSION

¶ 96    For the reasons stated above, we affirm the judgment of the circuit court of Cook County.

¶ 97    Affirmed.