NOTICE
Decision filed 09/04/20. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2020 IL App (5th) 190149-U

NO. 5-19-0149

IN THE

NOTICE
This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| MARCIA PHILLIPS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 14-L-339 |
| | ) | |
| JANE GALE, | ) | Honorable |
| | ) | Christopher T. Kolker, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE BOIE delivered the judgment of the court.
Justices Moore and Wharton concurred in the judgment.

**ORDER**

¶ 1     *Held*: The trial court abused its discretion in barring defendant's expert medical witness from testifying at trial as a sanction under Illinois Supreme Court Rule 219(a) (eff. July 1, 2002), where trial court found no deliberate disregard for its order by defendant or defendant's expert, and the sanction defeated the goal of a trial on the merits.

¶ 2     Defendant, Jane Gale, was the operator of a motor vehicle traveling northbound on East C Street in Belleville, Illinois, on June 30, 2016. Plaintiff, Marcia Phillips, was a passenger in defendant's vehicle when an accident occurred. Plaintiff was injured and brought suit against defendant. The case was tried to verdict in favor of plaintiff. The trial court entered judgment against defendant on March 12, 2019. Defendant appeals the

1

judgment of the trial court raising five issues for this court's review. On the first issue of whether the trial court abused its discretion in barring defendant's expert medical witness from testifying at trial as a sanction pursuant to Illinois Supreme Court Rule 219(c) (eff. July 1, 2002), we vacate the order barring defendant's expert witness and reverse the judgment of the trial court.

¶ 3                                                          BACKGROUND

¶ 4     In this section, we will focus on the background information contained in the record relevant to the trial court's decision to bar the defendant's expert witness. On June 30, 2016, plaintiff was a passenger in defendant's automobile when it struck the rear end of another vehicle. Plaintiff was riding in the back seat and, according to her complaint, sustained injuries to her neck, feet, back, cervical, shoulder, and lumbar area. Plaintiff sued defendant alleging one count of comparative negligence. Plaintiff brought her complaint against defendant by joining her as a party to a suit that plaintiff had pending concerning two separate, unrelated automobile accidents which occurred on July 25, 2013, and April 24, 2015, and involved three defendants who were not involved in the accident at issue in this appeal.

¶ 5     With respect to the two previous accidents, plaintiff initially filed suit on May 20, 2014, against a single defendant regarding the July 25, 2013, automobile accident. On August 14, 2015, plaintiff amended her complaint and added counts against two additional defendants in connection with the April 24, 2015, automobile accident. On February 21, 2017, plaintiff filed her second amended complaint adding the defendant in this appeal in connection with the June 30, 2016, automobile accident. At the time that plaintiff was

2

permitted to file her second amended complaint, the case against the other defendants had been pending for almost three years.

¶ 6    The defendant involved in the July 25, 2013, incident reached a settlement with plaintiff and was dismissed with prejudice on March 17, 2016. On April 4, 2016, plaintiff voluntarily dismissed one of the two defendants connected to the April 24, 2015, accident. On November 14, 2018, the second defendant from the April 24, 2015, accident was dismissed with prejudice, leaving the defendant in this appeal as the sole defendant in a 2014 case regarding the accident which occurred in 2016.

¶ 7    On November 20, 2017, defendant filed a motion to compel discovery alleging plaintiff had failed to fully respond to defendant's written discovery requests. Defendant's motion to compel stated that defendant had requested all of plaintiff's medical records, without limitation, and that plaintiff had objected to the release of any medical information beyond a five-year period. On December 18, 2017, the trial court granted, in part, defendant's motion to compel discovery and directed plaintiff to sign any necessary authorizations for plaintiff's past medical treatment from the year 2000 forward.

¶ 8    On December 11, 2017, plaintiff filed a motion to compel discovery alleging defendant had failed to completely respond to plaintiff's written discovery requests. Plaintiff had requested that defendant disclose any and all medications and/or drugs that defendant had taken within 24 hours immediately prior to the accident. On January 27, 2018, prior to plaintiff's motion to compel being heard by the trial court, defendant filed a supplemental discovery response that listed the medications she had taken within 24 hours immediately prior to the accident.

3

¶ 9    On April 3, 2018, the trial court entered a scheduling order. The scheduling order directed that all discovery, excluding controlled expert witnesses, be completed by July 24, 2018. The scheduling order also indicated that defendant was required to disclose controlled expert witnesses by June 1, 2018, and that any request for a physical examination pursuant to Illinois Supreme Court Rule 215(a) (eff. Jan. 1, 2018)[1] was required to be noticed for hearing by July 1, 2018. The case was scheduled for jury trial on September 24, 2018.

¶ 10    On June 1, 2018, defendant filed her controlled expert witness disclosures pursuant to Illinois Supreme Court Rule 213(f)(3) (eff. Jan. 1, 2018). Defendant disclosed Dr. Joseph Williams as a retained medical expert and indicated that Dr. Williams was to perform a Rule 215(a) medical examination of plaintiff. Dr. Williams's curriculum vitae was attached to defendant's disclosures.

¶ 11    Defendant filed a motion for a Rule 215(a) medical examination of plaintiff on June 29, 2018. The motion requested that plaintiff be required to appear for an evaluation by Dr. Williams on July 16, 2018. There is no trial court ruling regarding defendant's June 29, 2018, motion for Rule 215(a) medical evaluation within the record. On July 20, 2018, defendant filed a motion to continue the trial date stating that the parties had agreed that plaintiff was to undergo a Rule 215(a) examination by Dr. Williams on July 16, 2018, but

---

[1]Illinois Supreme Court Rule 215(a) provides that a court, upon motion, may direct a party to submit to a physical or mental examination by a licensed professional in a discipline related to the physical or mental condition at issue. Ill. S. Ct. R. 215(a) (eff. Jan. 1, 2018). A Rule 215(a) examination is commonly referred to as an independent medical examination.

that defendant had recently been informed that plaintiff could not be examined on that date and would need to reschedule. Concurrent with the motion to continue, defendant filed another motion for a Rule 215(a) medical examination which indicated that the parties had agreed that plaintiff's Rule 215(a) examination by Dr. Williams would occur on August 27, 2018.

¶ 12    On August 2, 2018, the trial court granted defendant's motion for a Rule 215(a) medical evaluation and reset the matter for jury trial on December 17, 2018. Plaintiff was examined by Dr. Williams on August 27, 2018, and following the examination, defendant filed a motion for extension of time to produce Dr. Williams's report and findings from the examination. The motion for extension of time to produce the Rule 215(a) report was noticed for hearing on October 1, 2018; however, plaintiff filed an amended notice of hearing changing the hearing date to October 15, 2018.

¶ 13    On October 4, 2018, plaintiff filed a motion to compel defendant's response to plaintiff's supplemental interrogatories and requests for production, and to strike defendant's interrogatories and requests for production directed to plaintiff. According to plaintiff's motion, supplemental interrogatories and requests for production pursuant to Illinois Supreme Court Rule 213(f) (eff. Jan. 1, 2018) were propounded to defendant on August 1, 2018, and defendant did not fully respond to the discovery requests. Plaintiff's motion went on to state that defendant's objections to the supplemental written discovery on the basis that it "appears to request information from Defendant's attorneys rather than from the Defendant" was nonsensical as defendant sought the same information from Dr. Gornet, plaintiff's treating physician. Plaintiff further argued that since Dr. Gornet was a

5

treating physician, and not a retained expert, defendant's Rule 213(f) interrogatories and requests for production directed to plaintiff should be stricken because the discovery requests were "not only improper, they are simply too burdensome."

¶ 14 On October 15, 2018, the trial court heard defendant's motion for extension of time and plaintiff's motion to compel and strike. The trial court granted defendant's motion for extension of time to produce Dr. Williams's report and findings from plaintiff's Rule 215(a) medical examination and then granted in part, and denied in part, plaintiff's motion to compel and strike. The trial court struck all of defendant's discovery requests regarding Dr. Gornet but granted defendant's discovery request seeking to determine whether plaintiff's Rule 215 examination was video recorded by an unknown party. Plaintiff was given 21 days to produce the video of the examination or certify its nonexistence. Over defendant's objection, the trial court then granted plaintiff's motion to compel and directed "defendant, her law firm, and her insurer" to respond to plaintiff's supplemental written discovery regarding Dr. Williams by November 14, 2018. The trial court's order[2] did not provide any specific rulings regarding defendant's objections to plaintiff's supplemental discovery nor did the trial court's order set out any specific information or documents that it was compelling defendant to disclose.

¶ 15 On November 14, 2018, defendant filed her supplemental responses in compliance with the trial court's October 15, 2018, order. Defendant's supplemental responses included, *inter alia*, for the previous five years, the total number of times Dr. Williams had

---

[2]There is no record of proceedings for the trial court's October 15, 2018, hearing within the record.

been retained by defendant's law firm; the total number of times Dr. Williams had been retained by defendant's insurer; the total number of independent medical examinations (IMEs) Dr. Williams had performed; Dr Williams's past income from his medical-legal work; a list of depositions given by Dr. Williams; and the amount defendant's insurer and attorney's firm had paid to Dr. Williams for deposition testimony. According to defendant's supplemental responses, the only documents not produced were Dr. Williams's and defendant's insurer's tax records, which defendant stated she did not possess.

¶ 16    Plaintiff also served defendant with a request to admit facts and genuineness of documents. Along with the written discovery requests, plaintiff served a subpoena *duces tecum* directing a custodian of records or corporate representative of Dr. Williams's employer, Orthopedic Center of Illinois, to appear for a deposition and produce documents concerning all of its physicians' medical-legal services for all law firms and insurance companies. On October 30, 2018, the clinical director of the Orthopedic Center of Illinois, Julie Britz, appeared for the deposition.

¶ 17    During her deposition, Ms. Britz admitted that the list of Dr. Williams's depositions omitted cancelled depositions for which the office received cancellation fees; that she inadvertently used an outdated fee schedule for some of the depositions on her list; that she had not checked to determine whether she could create a report of Dr. Williams's and the practice group's fee revenues from telephone calls with attorneys; and that she had not reviewed plaintiff's chart before her deposition.

¶ 18    Ms. Britz did confirm that Dr. Williams had not testified at a trial for the past five years, and Ms. Britz responded to questions concerning the list of dates, account numbers,

7

attorneys' name, and phone numbers for all of Dr. Williams's depositions conducted since March 2013. However, Ms. Britz stated there was no means to determine whether the depositions were for IMEs or treatment.

¶ 19    Ms. Britz stated that she believed that there would be an invoice in plaintiff's chart generated on October 24, 2018, documenting a charge of $500 for a telephone conference between Dr. Williams and defendant's counsel, but when asked to produce it, Ms. Britz stated, "I don't know. I don't have her chart, I don't have her records, I can't say a hundred percent."

¶ 20    Ms. Britz testified that, to the best of her knowledge, she had produced plaintiff's entire chart, but she refused to access plaintiff's chart during the deposition without consulting her attorney. Ms. Britz also failed to produce the total income generated for medical-legal work for the entire practice group. Concerning her compliance with the subpoena, Ms. Britz testified that "[s]ome of these there's no way we would be able to produce."

¶ 21    On November 5, 2018, Ms. Britz sent a follow-up correspondence to plaintiff's counsel indicating that both the charge and payment for the October 24, 2018, telephone conference would be entered into the plaintiff's chart once the fee had been paid and that, to date, the fee had not been paid. Ms. Britz's correspondence also indicated that she had run the requested report and could confirm that Dr. Williams had not previously charged or received payment for telephone conferences. Ms. Britz further confirmed in her correspondence that the single printout of plaintiff's account showing the IME charge and payment were the only items in plaintiff's chart.

8

¶ 22    On November 16, 2018, plaintiff filed an emergency motion to bar the testimony of Dr. Williams. According to plaintiff's motion, Ms. Britz testified that she could produce a report of cancellation fees and failed to do so; that she could produce a report of IMEs with patient names and failed to do so; that she admitted that she made an error in the fee for the dispositions which took place in 2018, stating that the fee was $1500 when in fact it was $2000 and then "guessed" that fee increase was in January 2018, but could not testify to the specific date; and that she could determine the person who had hired Dr. Williams to perform IME with a manual review within their system and did not do so. The motion also alleged that Ms. Britz stated that she believed she could possibly generate a report of Dr. Williams's and his practice group's fee revenues from telephone calls with attorneys and failed to do so, and failed to provide the invoice generated on October 24, 2018, documenting the telephone conference Dr. Williams had with defendant's counsel. Plaintiff's motion went on to allege that Ms. Britz never provided the name of the attorney that represented the Orthopedic Center of Illinois.

¶ 23    Concerning documents, plaintiff's emergency motion alleged that defendant provided a figure of $218,000 in income for medical-legal work performed by Dr. Williams, but did not provide any supporting documentation; that defendant failed to produce 1099 tax records for Dr. Williams and defendant's insurer; and that the records indicate that Dr. Williams received a payment of $2500 on October 3, 2017, and that no 1099 or record was produced corresponding with that payment.

¶ 24    Plaintiff alleged in her emergency motion as follows:

9

"Although ordered by this Court on October 15, 2018, to produce the information regarding its experts' medical-legal work, Defendant categorically failed. When asked for 1099 tax records, calendar entries, deposition notices, correspondence or any and all other documents listing or giving evidence or the nature, frequency, case, income, or hiring party for all medical legal work performed in the last five years, Defendant failed to produce any of the information that Julie Britz testified she could obtain."

Finally, plaintiff's motion noted that Dr. Williams's evidence deposition was set for November 27, 2018.

¶ 25    Defendant filed a response to plaintiff's emergency motion on November 26, 2018. In her response, defendant argued that plaintiff failed to identify, with particularity, how defendant's responses were deficient or noncompliant with the trial court's order. Defendant also noted that she did not possess any other records potentially responsive to plaintiff's Rule 213 discovery requests. Defendant further argued that plaintiff's emergency motion should be denied since the subpoena was directed to the Orthopedic Center of Illinois and that the proper remedy would be to enforce the subpoena, which plaintiff had not attempted.

¶ 26    Defendant also argued in her response that, in addition to not seeking enforcement of the subpoena, the deposition of Dr. Williams had not been conducted. Defendant argued that barring her expert witness would be an extremely harsh remedy and not justified in light of defendant's substantial compliance with the trial court's order. According to defendant, plaintiff had been provided "more than enough information to effectively cross-

examine Dr. Williams for potential bias or financial interest." Finally, defendant requested that, if the trial court deemed defendant's responses incomplete, she be allowed seven days in which to cure her compliance since the extension would not prejudice the plaintiff in any manner.

¶ 27   On November 26, 2018, the trial court conducted a hearing on plaintiff's emergency motion. At the hearing, defendant noted that:

> "[I]nformation has been produced on the number of IME's that Dr. Williams has done over the last five years, his deposition activity, his income from these activities, the frequency of his medical/legal work, and his history of interactions with defense counsel."

Defendant also argued at the hearing that plaintiff failed to seek enforcement of the subpoena or to conduct Dr. Williams's deposition, both of which were avenues for obtaining the information that was not in the possession of defendant or her counsel. As such, defendant argued that plaintiff's motion was premature because plaintiff could conduct the deposition of Dr. Williams, and if any information were still lacking, the trial court could then rule on plaintiff's motion to bar.

¶ 28   Plaintiff's argument at the hearing centered on the deposition of Ms. Britz and that, although defendant's supplemental responses indicated that she did not possess some of the requested records, Ms. Britz acknowledged that the information was available. Specifically, plaintiff stated that defendant's counsel was informed at Ms. Britz's deposition that plaintiff needed "the medical/legal income of his practice, the medical/legal income of Dr. Williams, I need [plaintiff's] complete file." Plaintiff also argued that there

11

was "mistakes in the compliance, inaccuracies." Plaintiff noted that defendant had produced a copy of a check to Dr. Williams in the amount of $2500 and that there is no charge by Dr. Williams in that amount in the records produced by defendant. Further, plaintiff noted that Ms. Britz never provided the name of the attorney that represented the Orthopedic Center of Illinois and that plaintiff received an unsigned letter from Ms. Britz stating, "Oh, that thing I told you is probably in our computer system, it's not there." Finally, plaintiff noted:

> "[PLAINTIFF'S COUNSEL]: *** So, on the 16th we filed this motion to bar because this information was compelled. We already discussed it in chambers with you.[3] We've done everything we possibly could to get the information ***."

¶ 29    After arguments, the trial court stated:

"[Defendant's counsel,] I understand your argument. And every once in awhile, oh, God, about once every two or three years something like this happens where you get—I'll—a noncompliant IME is basically what it is who kind of goes rogue, not because of the attorneys but just because their office does that. I don't think it's any reflection on [defense attorneys] at all. It happens. I mean, we have seen it. We have seen treaters do the same thing, to be fair, and every time it happens they get barred because I'm not going to mess around with trying to send a deputy to Springfield and having someone shackled and then brought down in a squad car with their computer. That's a little bit extreme. I just—if they're noncompliant with that, I

_____

[3]There is no indication within the record concerning the date, or who was present, during the in-chambers discussion.

12

don't even want to mess around with them if they're not going to follow a subpoena. I know, [plaintiff's counsel], you guys have been diligent in your various attempts trying to get compliance. Again, I understand it's not [defense attorneys] themselves that got a bad IME, and let's move on with the trial."

¶ 30   Upon completion of the hearing on plaintiff's emergency motion, the trial court issued the following order:

"This cause coming to be heard on Plaintiff's Emergency Motion to Bar the Testimony of Defendant's 213(f)(3) witness, Joseph Williams, M.D. Counsel for both parties appear and argue. Plaintiff's Motion GRANTED. Video Evidence Deposition of Dr. Joseph Williams set 11-27-18 at 5:00 pm is hereby stricken."

¶ 31   On December 11, 2018, a hearing on the parties' pretrial motions was conducted by the trial court. The trial court granted plaintiff's motion *in limine* to exclude any evidence of plaintiff's prior accidents, any injuries from her prior accidents, and any preexisting medical conditions. The trial court based its decision on defendant's failure to provide expert medical testimony to prove the prior accidents, injuries, or preexisting conditions were relevant to causation, damages, or some other issue of consequence. The defendant was also not permitted to use plaintiff's prior medical conditions or injuries for the purpose of impeaching plaintiff's medical witnesses. The trial court stated:

"I think then you end up down that road where you're allowing the jury to throw mud up against a wall for which there's no causation. You would have to instruct the jury—if I did it, you'd have to instruct the jury to then disregard it for purposes of causation. And to me you're creating mass confusion with the jury if you do that.

13

But the cases I read, especially in light of *Campbell*[4] or in that *Hawkes* case, it's

defendant's burden to get testimony that links it up. And I haven't—I don't see that

burden being met."

¶ 32    The case proceeded to trial on December 17, 2018. After the close of evidence, the

trial court granted plaintiff's oral motion for a directed verdict on the issue of past medical

special damages. The trial court stated:

"The problem for the defendant is the only evidence in the record—the only

competent evidence is [plaintiff's medical witnesses'] linking it up, linking up the

treatment to the accident. There is—the treatment at issue. There is zero evidence

to the contrary."

¶ 33    The jury rendered a verdict in favor of plaintiff on December 18, 2018, and awarded

plaintiff damages in the amount of $182,540.08. Defendant filed a motion for new trial on

January 17, 2019. The trial court denied defendant's motion for new trial and entered a

final judgment on March 12, 2019.

¶ 34    Defendant now appeals the judgment of the trial court, raising five issues for this

court's review. First, defendant argues that the trial court abused its discretion in barring

defendant's expert medical witness from testifying at trial as a Rule 219(c) sanction.

Second, defendant states that the trial court abused its discretion in excluding evidence of

---

[4]Both *Campbell v. Autenrieb*, 2018 IL App (5th) 170148, and *Hawkes v. Casino Queen, Inc.*, 336 Ill. App. 3d 994 (2003), discuss and apply the holding in *Voykin v. Estate of DeBoer*, 192 Ill. 2d 49 (2000), that where a defendant seeks to introduce evidence of a plaintiff's prior injury or medical condition at trial, the defendant must first introduce expert evidence showing why the prior injury or medical condition is relevant to causation, damages, or some other issue of consequences unless the trial court determines a lay person could readily appraise the relationship without expert assistance.

14

plaintiff's prior accidents, injuries, symptoms, and medical treatment. Third, defendant claims that the trial court erred in granting plaintiff's motion for directed verdict concerning plaintiff's medical special damages. Fourth, defendant maintains that the trial court abused its discretion in excluding evidence of plaintiff's medical expert's history as a medical witness for personal injury plaintiffs, his history of working with plaintiffs' counsel, and his income for his work as a witness. Fifth and finally, defendant argues that the trial court abused its discretion in excluding evidence that plaintiff's religious beliefs precluded her from having a medical treatment to facilitate a future surgery.

¶ 35                                    ANALYSIS

¶ 36    The first issue defendant raises on appeal is whether the trial court abused its discretion in barring defendant's expert medical witness from testifying at trial as a Rule 219(c) sanction. Defendant acknowledges that the imposition of sanctions is within the trial court's discretion, but argues that the trial court imposed an unduly harsh sanction given that defendant did not engage in in any deliberate, contumacious, or unwarranted disregard for the trial court's authority. Defendant states that the trial court's ruling barring Dr. Williams formed the basis for the trial court's later ruling precluding defendant from presenting any evidence of plaintiff's preexisting conditions and injuries. According to defendant, the trial court's ruling barring Dr. Williams altered the makeup of the evidence presented to the jury resulting in the trial court's entry of a directed verdict for plaintiff on her medical special damages.

¶ 37    Defendant also argues that plaintiff could have effectively cross-examined Dr. Williams on any potential bias, since plaintiff had sufficient information concerning the

15

type of medical-legal work Dr. Williams had performed in the previous five years and the compensation for that work. Defendant also notes that Dr. Williams was never deposed and, as such, argues that plaintiff's emergency motion was premature. It is defendant's position that the trial court should have allowed Dr. Williams's deposition to proceed and, if still warranted, then address plaintiff's emergency motion. Further, defendant states that the trial court could have allowed defendant seven days in which to cure any noncompliance identified by the trial court. Defendant claims that barring Dr. Williams did not balance the needs of discovery and the resolution of the issues on their merits, but instead, disregarded the merits entirely.

¶ 38    Illinois Supreme Court Rule 219 provides possible consequences for a party's refusal to comply with rules or orders relating to discovery. Ill. S. Ct. R. 219 (eff. July 1, 2002). Specifically, Rule 219(c) provides a nonexclusive list of sanctions a trial court may impose for noncompliance with a discovery order entered by the court, ranging from a mere stay in the proceedings to the dismissal of the offending party's cause of action. Ill. S. Ct. R. 219(c) (eff. July 1, 2002). The decision to impose sanctions pursuant to Rule 219(c) and, if so, the type and degree of the sanction, is largely within the sound discretion of the trial court, and that decision will not be disturbed absent a clear abuse of discretion. *Shimanovsky v. General Motors Corp.*, 271 Ill. App. 3d 1, 7 (1994).

¶ 39    However, "[b]arring a witness from testifying [under Rule 219] is a drastic sanction [for nondisclosure] and should be exercised sparingly." *Curran Contracting Co. v. Woodland Hills Development Co.*, 235 Ill. App. 3d 406, 412 (1992). It is a sanction in the

16

category of the most extreme sanctions available to the trial court where less severe sanctions could be utilized to compel compliance with discovery.

¶ 40    In determining which sanctions to impose under Rule 219(c), the trial court must seek to accomplish the object of discovery, and not seek to impose punishment. "Sanctions are to be imposed only when the noncompliance is unreasonable, and the order entered must be just. [Citation.] A just order is one which, to the degree possible, insures both discovery and trial on the merits." *White v. Henrotin Hospital Corp.*, 78 Ill. App. 3d 1025, 1027-28 (1979). A party's noncompliance is "unreasonable" when there has been a deliberate and pronounced disregard for a discovery rule or order. *Shimanovsky*, 271 Ill. App. 3d at 7.

¶ 41    In this case, the trial court stated that "[Orthopedic Center of Illinois's] noncomplian[ce] with that, I don't even want to mess around with them if they're not going to follow a subpoena. *** Again, I understand it's not [defense counsel] themselves that got a bad IME." Plaintiff does not cite, and this court cannot locate, any portion of the record that indicates the trial court found a deliberate or pronounced disregard for its order by defendant. As such, defendant's noncompliance cannot be held as unreasonable.

¶ 42    Plaintiff, however, argues that the law assigns defendant accountability over the actions of her controlled expert witness and, as such, defendant is responsible for any failure to fully respond to plaintiff's supplemental discovery. Plaintiff cites to *Kubicheck v. Traina*, 2013 IL App (3d) 110157, which noted that:

"The discovery rules impose enforceable obligations upon the parties, including a duty to disclose relevant and discoverable information relating to their controlled

expert witnesses. [Citation.] The failure to make such disclosures in a timely and complete fashion justifies sanctions against the parties, even if the failure is the result of actions taken or not taken by the controlled witnesses themselves." *Id.* ¶ 39.

¶ 43 In *Kubicheck*, the information that the expert failed to provide was a list of case names and numbers for all cases in which the expert had testified by deposition or in court, and the names of the other lawyers or law firms who had retained the witness as an expert during the past five years. *Id.* ¶¶ 12, 14. Such information went directly to the identification of any potential bias on behalf of the expert. The trial court had issued two orders directing the party to provide the information and they failed to do so. *Id.* ¶ 13. The deposition of the expert had been conducted and the information was not provided. *Id.* ¶ 15. A list was eventually provided shortly before trial, but then determined to be incomplete while the trial was ongoing. *Id.* ¶¶ 17, 18. The trial court allowed the expert to testify but later granted the party's motion for new trial stating that the court did not give sufficient weight to the importance of the information not provided by the expert. *Id.* ¶¶ 18, 25. Although the trial court did not find any misconduct on behalf of the party, the trial court did find that, " '[A]t a minimum [expert's name] has shown gross disregard for the rules of this Court which are designed to provide a fair procedure.' " *Id*. ¶ 25. As such, the party was held accountable for the " 'gross disregard for the rules of this Court' " by its expert.

¶ 44 Unlike *Kubicheck*, the trial court in this matter found no gross disregard for its order by defendant's expert. The trial court specifically noted the Orthopedic Center of Illinois's noncompliance and, by quashing Dr. Williams's deposition, the trial court did not allow the expert himself to cure any deficiencies in his employer's noncompliance with plaintiff's

subpoena. Further, defendant did provide a list of Dr. Williams's depositions, along with the names and phone numbers of the law firms, conducted within the previous five years and a letter stating that he had not testified in a trial within the previous five years. The trial court made no finding that defendant's expert had blatantly or grossly disregarded a rule or order of the court for which defendant could be held accountable.

¶ 45 We would also note that the court in *Kubicheck* stated:

"However, even assuming *arguendo* that this court has the authority to grant the relief sought by [plaintiff] under Rule 366(a)(5), it would be premature and inappropriate to do so. As noted above, the purpose of a discovery sanction under Rule 219(c) is to coerce compliance with discovery rules and orders and encourage trial on the merits, not to punish the dilatory party. [Citations.] *** Barring [defendant's expert] from testifying during the retrial would be a purely punitive sanction, and an onerous one at that. It would not have the effect of ensuring complete discovery or encouraging trial on the merits. To the contrary, it would result in the exclusion of the defense's only expert witness aside from [defendant] himself. [Defendant's expert] should be given an opportunity to make a complete and timely disclosure of all relevant information before the retrial. If he fails to do so, the trial court may revisit its July 2011 order and bar him from testifying. However, it would be premature and improperly punitive to enter such a sanction at this time. The trial court's decision not to bar [defendant's expert] from testifying on retrial was not an abuse of discretion, and we will not disturb that decision." *Id.* ¶ 43.

19

¶ 46 Along with determining whether a party's noncompliance was unreasonable, the next factor to be considered is whether the order barring Dr. Williams was a just order that insured both discovery and trial on the merits. *White*, 78 Ill. App. 3d at 1027-28. The trial court granted summary judgment on the issue of liability and proximate cause, and the jury trial proceed solely on the issue of damages. Defendant, however, could present no evidence of plaintiff's preexisting injuries or medical conditions since the trial court barred her expert and expert testimony would be required to demonstrate the relevancy of plaintiff's prior injuries. See *Voykin v. Estate of DeBoer*, 192 Ill. 2d 49, 59 (2000) (requiring expert testimony demonstrating that prior injury is relevant to causation, damages, or some other issue of consequence unless the trial court determines that the nature of the prior and current injuries are such that a lay person could readily appraise the relationship, if any, between those injuries without expert assistance). We agree with the *Kubicheck* court that there can be no trial on the merits when one party is completely prohibited from presenting evidence on the sole issue before the jury. As such, the trial court's sanction of barring Dr. Williams did not insure both discovery and a trial on the merits.

¶ 47 Several other factors are usually considered in determining whether the exclusion of a witness is an appropriate sanction for a party's noncompliance with discovery under Rule 219. These factors[5] include: (1) the surprise to the adverse party, (2) the prejudicial

---

[5]Both parties discuss the five factors set forth in *King v. American Food Equipment Co.*, 160 Ill. App. 3d 898, 967 (1987). These five factors are also listed in *Ashford v. Ziemann*, 99 Ill. 2d 353, 369 (1984), but other decisions, such as *Phelps v. O'Malley*, 159 Ill. App. 3d 214, 224 (1987), and *Curran Contracting Co. v. Woodland Hills Development Co.*, 235 Ill. App. 3d 406, 411 (1992), list an additional factor of "the

effect of the testimony, (3) the diligence of the adverse party, (4) the timely objection to the testimony, and (5) the good faith of the party calling the witness. *King v. American Food Equipment Co*., 160 Ill. App. 3d 898, 967 (1987); see also *Curran Contracting Co. v. Woodland Hills Development Co.*, 235 Ill. App. 3d 406, 411 (1992) (listing the above factors along with an additional factor of "the nature of the testimony").

¶ 48    Defendant states that there was no surprise to plaintiff since Dr. Williams was not a late disclosure and also acknowledges that plaintiff was diligent in seeking discovery. Defendant further states that there are no issues involving the timeliness of any objections and that neither the plaintiff nor the court challenged defendant's good faith in responding to plaintiff's discovery. As such, defendant argues that the primary factor in determining whether the trial court abused its discretion in barring Dr. Williams rests on the factor of the prejudicial effect of the testimony.

¶ 49    According to defendant, there was no prejudice to plaintiff due to any discovery violation since defendant had disclosed sufficient information concerning Dr. Williams's past medical-legal work, his past income from that work, and his history with both defendant's counsel and defendant's insurer. Defendant maintains that plaintiff could have examined Dr. Williams effectively on the issue of his potential bias and/or challenged his credibility at trial under the arguments that Dr. Williams had a financial interest in this case or in working with defense counsel or defendant's insurer in the future given the

---

nature of the testimony." We will not address the factor of "the nature of the testimony" since the factor is not determinative to our analysis.

information provided. Defendant asserts that the failure to calculate and disclose Orthopedic Center of Illinois entire practice group's revenues for telephone conferences and deposition cancellation fees, or Dr. Williams's tax returns, did not prevent plaintiff from challenging Dr. Williams's credibility, because plaintiff's ability to cross-examine Dr. Williams did not require absolute specificity regarding the dollar amounts of the compensation.

¶ 50 Plaintiff, however, argues that the *King* factors do not support defendant's position. Although plaintiff acknowledges that there was no factor of surprise or diligence, it is plaintiff's position that defendant's failure to produce the discovery was highly prejudicial as it precluded plaintiff from being able to conduct an effective cross-examination of defendant's expert since there were inconsistencies and/or discrepancies in Dr. Williams's deposition fees. Plaintiff states that she could not have conducted an effective examination of Dr. Williams with the information provided since the information was not accurate.

¶ 51 Plaintiff further argues that defendant's failure to produce all of the information requested by plaintiff was in bad faith, since defendant did "absolutely nothing to urge her controlled expert to comply with the Court's Order" or "even attempt to obtain the mandated discovery" According to plaintiff, the barring of defendant's expert witness was due in part to defendant's own inaction.

¶ 52 Both parties agree there was no surprise to plaintiff and that plaintiff was diligent in seeking discovery. As such, the first *King* factor ((1) the surprise to the adverse party) favors defendant and the third *King* factor ((3) the diligence of the adverse party) favors plaintiff. The fourth *King* factor ((4) the timely objection to the testimony) also favors

22

plaintiff. Although plaintiff argues that defendant exercised bad faith, plaintiff does not cite to any portion of the record, and we cannot locate anything within the record, that indicates that the trial court determined any bad faith on the part of the defendant. As such, the fifth *King* factor ((5) the good faith of the party calling the witness) favors defendant. We agree with defendant that the second *King* factor ((2) the prejudicial effect of the testimony) is the determining factor. We note, however, that there is no testimony since Dr. Williams's deposition was not allowed to proceed, but both parties have argued the prejudicial effect of the incomplete discovery under this factor, and we will consider those arguments.

¶ 53   Although plaintiff argues that she was prejudiced by the missing information, we do not find that all the information requested by plaintiff was critical for her cross-examination of Dr. Williams. As noted by the court in *Pontiac National Bank v. Vales*, 2013 IL App (4th) 111088:

> "In response to the prevalence of expert testimony in modern-day litigation and the difficulty of disproving an expert's opinion testimony, the Illinois Supreme Court decided to expand the permissible bounds of expert cross-examination. [Citations.] In those cases, the supreme court held that it is permissible to cross-examine an expert witness about the amount and percentage of income that he generates from his work as an expert witness, the frequency with which he testifies as an expert, and the frequency with which he testifies for a particular side, in order to expose any bias, partisanship, or financial interest that may taint his testimony and opinions. [Citations.] Nevertheless, cross-examination is not a 'free-for-all.' It is not

23

a proper function of cross-examination to harass expert witnesses or to unnecessarily invade their legitimate privacy. Such unbridled cross-examination discourages reputable professionals from testifying during trial, making it difficult for parties to obtain the expert testimony necessary to meet their burden of proof." *Id.* ¶ 17.

¶ 54 Although we acknowledge that defendant failed to provide some information, much of that information pertained to Dr. Williams's employer and exceeded the scope necessary to expose any bias, partisanship, or financial interest of Dr. Williams. Thus, while the *King* factors of the diligence of the adverse party and the timely objection to the testimony favor plaintiff, the important factors of surprise, prejudice, and good faith weigh in defendant's favor.

¶ 55 Plaintiff argues that the trial court granted defendant "extension after extension" and "postponed trial" to allow defendant an opportunity to comply with discovery. A review of the record, however, demonstrates a single trial court order concerning plaintiff's motion to compel. Defendant's motion to continue the trial date was based on plaintiff's need to reschedule the IME and was not related to defendant's responses to plaintiff's supplemental discovery. As such, the record reflects a single trial court order directing defendant's discovery responses and, contrary to plaintiff's argument, there is nothing in the record to indicate that the trial court postponed the trial to allow defendant an opportunity for compliance.

¶ 56 Plaintiff also argues that a trial court's sanction of barring an expert witness is a necessary means to ensure the speedy and efficient resolution of cases and that a trial court

24

should not hesitate to bar testimony when a party unreasonably refuses to comply with discovery, citing *Fraser v. Jackson*, 2014 IL App (2d) 130283, ¶ 29, and *Campen v. Executive House Hotel, Inc.*, 105 Ill. App. 3d 576, 587 (1982). In the cases cited by plaintiff, however, the conduct of the offending party was more egregious than in the present case. The trial court in *Fraser* ordered compliance on three separate occasions, and the offending party in *Campen* failed to disclose relevant discovery information until trial. *Fraser*, 2014 IL App (2d) 130283, ¶ 29; *Campen*, 105 Ill. App. 3d at 587.

¶ 57    Here, the trial court's order granting plaintiff's motion to compel generally directed defendant to respond to plaintiff's supplemental discovery and did not set out any specific information that it determined was lacking in defendant's initial responses. The trial court's order also did not address whether some of the requested information may have been outside the appropriate scope of discovery.

¶ 58    We further note that defendant was given no warning that the trial court was considering such a harsh sanction and that lesser sanctions were available to the trial court that would have met the object of discovery and ensuring a trial on the merits. Defendant had requested seven days in which to cure any deficiencies identified by the trial court. We are mindful that trial courts are watchful of their dockets and loath to allow cases to linger for years; however, it was the trial court itself that allowed this claim to be joined to a cause of action that had already been pending for almost three years. Further, Dr. Williams's deposition was scheduled for the day after the hearing on plaintiff's emergency motion. The trial court could have allowed his deposition to proceed, then, if the trial court

25

determined that plaintiff was unable to effectively cross-examine him or that Dr. Williams failed to provide relevant information, bar his testimony at trial.

¶ 59    Where discretion is vested with the trial court, this court is hesitant to disturb those findings. In determining whether a trial court imposed appropriate sanctions, this court must review the factors set forth above on a case-by-case basis, being mindful that the trial court is in the best position to determine the means of ensuring compliance with its orders. However, where a case is basically decided on a single ruling of the trial court, such as the dismissal of a cause of action, or in this matter, the barring of an expert witness that defeats the entire defense, we must ensure that the sanction awarded by the trial court comports with the standards discussed above to ensure the object of discovery and a trial on the merits. Under the circumstances of this case, we agree with defendant that the trial court imposed an extremely harsh sanction for defendant's nondisclosure and that the sanction was an abuse of discretion.

¶ 60    Therefore, we vacate the order barring defendant's expert witness, reverse the judgment of the trial court, and remand this matter for further proceedings. Although we vacate the trial court's order barring defendant's expert witness at this point, our decision does not restrict the trial court from further addressing any discovery issue concerning defendant's expert, if necessary. Because we have determined that the trial court erred in barring defendant's expert witness, defendant's remaining issues are moot and will not be addressed.

¶ 61                                     CONCLUSION

¶ 62    For the foregoing reasons, we vacate the order barring defendant's expert witness,

reverse the judgment of the trial court, and remand this matter for further proceedings.


¶ 63    Reversed and remanded.